## CALIFORNIA & O. LAND CO. *v.* GOWEN, Sheriff.

(*Circuit Court, D. Oregon.* January 4, 1892.)

1. ILLEGAL ASSESSMENT, WHEN TAX LEVIED ON MAY BE ENJOINED.
   Where an assessor assessed a large body of lands belonging to the plaintiff, of various values, at a uniform value. without reference to the local advantages of the various parts of the tract or tracts, and beyond the cash value of the whole, and relatively at a much greater value than the lands of resident tax-payers, for the purpose of favoring the latter at the expense of the former, equity will restrain the collection of a tax levied upon such an assessment, when it further appears that the collection of the tax will cast a cloud upon the title of the plaintiff, and involve the party in a multiplicity of suits.

2. BOARD OF EQUALIZATION.

　　The board of equalization is a part of the machinery for the assessment of property for taxation, and a person, by asking it to reduce an alleged overvaluation of his property, does not thereby elect to pursue a remedy at law for such overvaluation, or an illegal or fraudulent assessment, if it be such.

3. THE WRIT OF REVIEW.

　　A writ of review directed to the board of equalization is the commencement of proceedings at law to correct such assessment, on which the circuit court examines the record of the board, including the facts found, if any, and determines, without reference to the evidence, whether, as a matter of law, the board has exceeded its jurisdiction, or exercised its functions erroneously, to the injury of the substantial rights of the plaintiff therein.

(*Syllabus by the Court.*)

In Equity.　Suit for an injunction.

*Mr. Charles B. Bellinger*, for plaintiff.

*Mr. N. B. Knight*, for defendant.

DEADY, J.　This suit is brought by the California & Oregon Land Company, a corporation formed under the laws of California, to have E. W. Gowen, the sheriff of Klamath county, Or., enjoined from selling certain lands of the plaintiffs for alleged delinquent taxes.

It is alleged in the bill that the plaintiff is the owner of 185,902 acres of land, situate in said county, and particularly described therein; that in the year 1890 the assessor of the county made an assessment of said lands at the valuation of $1 per acre, although the same were of widely different values, and some of them only nominal value; that said assessment exceeds the aggregate cash value of said lands, while all other assessments of land in said county were made at not to exceed one-half their cash value; that thereafter the plaintiff appeared before the board of equalization of said county, and asked to have said assessment reduced, but said board refused so to do; that said arbitrary classification and assessment of said lands at relatively much beyond the assessment of other property in said county, and much beyond their actual value, is for the purpose, as plaintiff believes, of relieving resident tax-payers from their proportion of the taxes; that plaintiff has been at all times ready and willing to pay its just proportion of taxes upon said lands, which comprise all its taxable property in said county, and on March 25, 1891, did tender and pay to the defendant the sum of $1,487.21, which sum he credited as part payment of said taxes.

That in April, 1891, the defendant made a return of delinquent taxes, which did not contain any description of real property upon which taxes remained unpaid, as required by section 2809 of Hill's Laws of Oregon, or at all, nor was there any delinquent assessment roll annexed thereto, as stated in said return, but said return simply contained a statement in gross of the amount of taxes collected and uncollected, without the name of a delinquent or the mention of a tract of land on which the tax was not paid; that thereupon, on April 16, 1891, the county court of said county, without any other or further return being made by said sheriff, issued a pretended warrant commanding him to collect the taxes mentioned in the foregoing delinquent tax-list, which, so far as appears, did

not exist, and on August 8, 1891, the defendant by virtue of such warrant pretended to levy upon certain of the lands so assessed as aforesaid, and has advertised the same for sale to satisfy a delinquent tax of $2,275.30, with costs; that the tax actually levied upon said advertised lands amounts to the sum of $99, and said lands are worth more than $2,000, and the tax claimed to be delinquent in the sum of $2,230.83; and that unless restrained by the order of this court the defendant will proceed to sell the lands levied on, and make deeds to the purchasers thereof, which will constitute a cloud on plaintiff's title, and involve it in a multiplicity of suits in respect thereto.

The defendant interposed a demurrer to the bill, and after argument the court, on November 16th, overruled the same, and allowed a provisional injunction. On motion of the defendant the case was reheard on December 28th.

By section 2815 of the Compilation of 1887, a warrant for the collection of taxes is made an execution against property, and "shall be executed and returned in like manner." The following section authorizes such warrant to be levied on any real property, or sufficient thereof, of the person against whom the tax is charged. This explains the action of the sheriff in levying upon only a portion of the premises to satisfy the tax against the whole.

On the argument it was admitted by counsel for the defendant that upon the statements of the bill as to the manner and purpose of making the assessment, coupled with the allegation as to the multiplicity of suits and clouds on title, the plaintiff is entitled to an injunction to restrain the collection of the tax as illegal and fraudulent; and of this there can be no doubt.

Section 2752 of the Compilation of 1887 provides that lands and town lots shall be valued by the assessor "at their true cash value, taking into consideration the improvements on the land and the surrounding country, the quality of soil, the convenience of transportation lines, public roads, mills, and other local advantages." An assessment willfully made in disregard of these requirements, and for the purpose of imposing upon the owner of the property more than his just proportion of the public burden, is fraudulent and illegal. *Hersey* v. *Board*, 37 Wis. 75; *Merrill* v. *Humphrey*, 24 Mich. 170; *Railway Co.* v. *Cole*, 75 Ill. 591; *Dundee* v. *Parrish*, 11 Sawy. 92, 24 Fed. Rep. 197; *Balfour* v. *Portland*, 12 Sawy. 122, 28 Fed. Rep. 738. The Michigan case was one very like this. It was alleged in the bill and admitted by demurrer that the supervisors had assessed the lands of the plaintiff "above their value, and relatively very much beyond the assessment of other property, for the purpose of relieving resident tax-payers from their proportion of the taxes."

The plaintiff professed to be willing to pay his just proportion of taxes, but had not paid or tendered any proportion of them; and for this reason the injunction was denied, but the bill dismissed without prejudice. But on the main question Mr. Justice COOLEY, in delivering the opinion of the court, laid down the law in such cases as follows:

After stating that the courts cannot sit in judgment upon the supposed errors of the assessor, and substitute their opinions for his, he says:

"But it remains to be seen whether what is sought here is a review of the assessor's judgment. The charge is that the several supervisors have purposely assessed the property of the complainant beyond its value, and above the assessment of other persons, with a fraudulent intent to compel the payment by him of an undue proportion of the public taxes. * * * It is admitted that the supervisors have not brought their judgment to bear upon the question of values, but have set aside and disregarded their duty for the express purpose of perpetrating a wrong upon an individual.

"The question, then, is this: A public officer being empowered by law to apportion certain burdens among the citizens, as in his judgment shall be just, being actuated by a fraudulent purpose, instead of obeying the law, disregards its mandate, declines to bring his judgment to bear upon the question submitted to him, and arbitrarily, and with express reference to defeating the ends at which the law aims, determines to impose an excessive burden upon a particular citizen. Has this citizen any remedy against the threatened wrong?

"We think this question can admit of but one answer. A discretionary power cannot excuse an officer for refusal to exercise his discretion. His judgment is appealed to; not his resentments, his cupidity, or his malice. He is the instrument of law to accomplish a particular end through specified means; and when he purposely steps aside from his duty to inflict a wanton injury, the confidence reposed in him has not disarmed the law of the means of prevention. His judgment may, indeed, be final, if he shall exercise it; but an arbitrary and capricious exertion of official authority, being without law, and done to defeat the purpose of the law, must, like all other wrongs, be subject to the law's correction."

It is also admitted that equity will not enjoin the collection of a tax merely because it is illegal. In addition to this, it must appear that the case falls within some recognized head of equity jurisdiction, as that the enforcement of the tax would lead to a multiplicity of suits, or cast a cloud upon the title of the plaintiff. *Dows* v. *Chicago*, 11 Wall. 110; *State Railway Tax Cases*, 92 U. S. 614.

Here it is admitted on the showing in the bill that the tax is illegal by reason of the manner and purpose of the assessment, and if enforced it will cast a cloud upon the title of the plaintiff, and involve it in a multiplicity of suits. Therefore he ought to have relief by injunction from this court.

But the defendant contends, and this was the burden of his counsel's argument on the rehearing, that the plaintiff, by going before the board of equalization, and asking it to correct the assessment, has elected to pursue his remedy at law, and is thereby precluded from resorting to a court of equity, and is driven to a writ of review to correct the action of the board of equalization.

In support of this position he cites *Railway Co.* v. *Hodges*, 113 Ill. 323; *Bank* v. *Board*, 25 N. Y. 312; *Railway Co.* v. *Board*, 48 N. Y. 513. I have examined these cases carefully, and find them not in point.

By section 2778 of the Compilation of 1887, the county judge, county clerk, and assessor are made a board of equalization to correct assessments, and increase or reduce the valuation of property assessed.

In my judgment, this board is merely a part of the machinery of assessment. No relief can be had against a mere overvaluation of property incident to the infirmity of human judgment, except by an appeal to it.

In the case of an illegal assessment, relief may be had in equity without resorting to the board. *Balfour* v. *Portland*, 12 Sawy. 124, 28 Fed. Rep. 738. But the party aggrieved in such case may present his case to the board, without forfeiting his right to go into equity. An appeal to this board is in no sense an election to pursue a remedy at law. It is merely the last act in the matter of the assessment.

Whoever is dissatisfied with the action of this board in the matter of his assessment may consider whether he will have his action reviewed on a writ of review from the circuit court, or seek relief in equity; but, whichever course he elects to pursue, that he is bound by. If the judgment of the court of law is adverse, he cannot fall back on equity.

A writ of review, under the Code, is the equivalent of the common-law writ of *certiorari*. The latter is defined as "a writ issuing from a superior court to an inferior court, tribunal, or officer exercising judicial powers, whose proceedings are summary or in a course different from the common law, commanding the latter to return the records of a cause depending before it to the superior court." 3 Amer. & Eng. Enc. Law, 60.

The writ of review issues from the circuit court to an inferior court, officer, or tribunal in the exercise of judicial functions, where the same appears to have exercised such functions "erroneously, or to have exceeded its jurisdiction, to the injury of some substantial right of the plaintiff." Comp. Laws 1887, § 585.

The supreme court of the state has decided that the board of equalization was a tribunal to whom this writ might issue. *Poppleton* v. *Yamhill Co.*, 8 Or. 337. The return to the writ must not include the evidence, and if it does the court will not consider it. The facts found by the inferior tribunal constitute the return upon which the court acts in determining whether such tribunal exceeded its jurisdiction, or exercised its functions erroneously, to the injury of the plaintiff in the writ. *Road Co.* v. *Douglas Co.*, 6 Or. 303; *Poppleton* v. *Yamhill Co.*, 8 Or. 337.

In this case the writ of review would not furnish the plaintiff any remedy for this illegal assessment. The board undoubtedly had jurisdiction to examine the assessment, and, regardless of the alleged motives which prompted it, to increase, diminish, or affirm it, as it thought proper. By refusing to reduce the assessment, it practically affirmed it. Its finding of fact, if any, would be that the assessment was according to the true valuation of the property; and with such a return the circuit court would be bound to affirm its action. There would be nothing else to do. The circuit court cannot substitute its judgment for that of the assessor, or the board of equalization, as to what is the assessable value of property. Its power is confined to questions of law that arise on the face of the return.

It is absurd to suppose that, because the plaintiff asked the board of equalization to reduce its assessment, it was thereby irrevocably committed to such a fruitless remedy at law as the writ of review.

The plaintiff is entitled to have this injunction maintained to protect his property from the imposition of a tax levied upon an illegal and fraudulent assessment, and attempted to be collected on a void process.