CHISOLM et al. v. CAINES et al.

In re HUCKS et al.

(Circuit Court, D. South Carolina. March 2, 1903.)

1. CONTEMPT OF COURT—ACTS CONSTITUTING—WILLFUL DISREGARD OF INJUNCTION.

A person may be guilty of a contempt of court in doing an act which he knows the court has prohibited by injunction—as by willfully trespassing on lands, with knowledge that the court had adjudged them to be private property, and had enjoined the defendants in the suit, and "all persons whomsoever," from trespassing thereon—although he was not a party to the suit, and is neither the agent or servant of, nor in privity with, any of the parties. In such case he is not technically guilty of a violation of the injunction, but of an independent act of disrespect to the court, and disregard of its decree, which constitutes a contempt of the court, and may be punished as such without reference to its effect upon the rights of the suitors.

Proceedings for Contempt of Court against J. Jenkins Hucks and others. On rule to show cause, and returns thereto.

J. P. K. Bryan, for petitioners.

Smythe, Lee & Frost, for respondents.

SIMONTON, Circuit Judge. The record discloses that on 31st October, 1893, Alexander R. Chisolm and others filed their bill of complaint in this court against Edmund A. Caines, commonly known as Ball Caines, and certain other parties, citizens and residents of the state of South Carolina. The bill alleged that the complainants were lessees of a person holding under the grant of the Carteret Barony, dated in 1733, the same being for a large body of land and marshes on the waters of Winyah Bay, in the province of South Carolina; that they had procured said lease for the purpose of securing the exclusive right to hunt and shoot the wild game upon said lands and marshes, and had gone to great expense in building houses and employing gamekeepers, posting notices over all of the said marshes warning trespassers off said marshes, and forbidding all persons to shoot thereon; that in despite of said notices the persons named as defendants had persisted each year in trespassing on said marshes, shooting game thereon, frightening them away, and by every means more or less interfering with the exclusive rights of complainants, and destroying the value of their property; that Edmund A. Caines had combined and confederated with all the defendants above named, and others whose names were unknown to complainants, and who, when discovered, they pray may be inserted, to continue said trespassing in manner aforesaid, with the injurious results aforesaid.

The bill prayed an injunction and process. Upon the filing of the bill a rule to show cause, with the usual restraining order, was issued and served. Upon return to the rule, cause was shown, in effect, that the lands in question were common property of all the citizens of the state who had equal rights thereon, and denied any exclusive

¶ 1. See Injunction, vol. 27, Cent. Dig. § 495.

right or property in complainants; that this common right had been enjoyed by all the citizens of the state from the settlement of the colony, and had never been disputed until this bill was filed. The acts of alleged trespass were admitted. On the 13th April, 1894, presumably having been notified for this purpose, the state of South Carolina intervened in order to protect the alleged common right, and was made a party defendant. On the 3d September, 1894, the state, by the Attorney General, filed a disclaimer, stating that its previous action was based on a misapprehension of facts, and admitted the title of the complainant lessees. Answer was filed by the defendants to the original bill, setting up the same defense as the return to the rule. Issue was joined, testimony taken, and the cause came to a full hearing. Counsel of character and ability represented the defendants, and made exhaustive argument in their behalf. After hearing pleadings, testimony, and argument, a perpetual injunction was issued by this court, restraining the defendants, and each of them, from entering on the marsh lands and the creeks permeating the same, except certain creeks by name declared to be navigable streams, and from shooting game thereon. 67 Fed. 285. The decree of the court recognized fully the exclusive right claimed by the complainants. No appeal was taken from this decree, and it now stands unreversed. On the 28th November, 1896, the complainants filed their petition in the cause, stating that they had charged the defendants therein with conspiring and confederating with certain parties unknown, but whose names, when discovered, they pray may be inserted; that they have discovered some of the persons who were thus combining and confederating with said defendants, to wit, M. T. Doig, and certain other parties named, and praying that they may be made parties. A rule was granted against these persons named in the petition, and on the return to this rule they were also enjoined. On the 23d of August, 1901, a similar petition was presented by the complainants, naming A. J. Westbury and certain other parties as engaged in the same conspiracy, and with a similar prayer. A rule was issued, and on the return thereto they were also enjoined, and in the order enjoining them were included in the same all persons whomsoever. On the 11th December, 1902, the complainants filed an affidavit against J. Jenkins Hucks and Frank Hucks, and on the same day an affidavit was filed against Robert H. Spencer, Barney Bassert, alias Bassant, J. E. McQuade, Herbert McDonald, J. B. Johnson, and Ben Tamplet. The affidavits in both cases alleged that the parties named therein on that same day entered upon the property of the complainants, trespassing and shooting ducks thereon. Thereupon rules were issued upon each of the persons named, calling upon them to show cause why they should not be attached for contempt of the injunction of this court. The affidavits and the rules are the same in each case, and are, at large, as follows:

"On hearing and filing the affidavits of James R. Powell, hereto annexed, and on motion of J. P. K. Bryan, solicitor for complainants herein, it is ordered that [here the names were inserted] do show cause before this court at Charleston, S. C., at the United States courthouse, on Thursday, the 18th day of December, 1902, at ten o'clock a. m., why they, the said J. Jenkins Hucks and Frank Hucks, and each of them, should not be attached and com-

mitted for contempt of this court, for violation of the order and decree of this court heretofore rendered in this cause, enjoining the defendants and all persons from trespassing or entering upon the premises of complainants herein, more particularly upon Duck creek, within the boundaries of said Friendfield, property described in the bill of complaint herein. It is further ordered that a copy of this order and affidavit of James R. Powell, hereto annexed, be served forthwith upon the said parties."

"Personally appeared before me, W. T. Turbeville, a notary public for South Carolina, James R. Powell, game warden for the Annandale Gun Club, and makes oath that he has been for some time past, and is now, game warden of the Annandale Gun Club, lessee of the premises known as 'Friendfield,' in the county of Georgetown, state of South Carolina, being the same premises described in the bill of complaint herein; that on the 24th day of November, 1902, while in the discharge of his duties as such game warden, he saw [here the names of the parties are inserted] shooting ducks in Duck creek, same being one of the creeks mentioned in the final decree in the above-entitled cause, in which the injunction issued perpetually enjoined defendants therein, their agents, attorneys, and all persons whomsoever, from trespassing in same, and from shooting ducks therein; that said Duck creek is, and has been, posted with printed notices warning all persons from shooting or trespassing upon said lands and waters, and notice given of the decree and such final injunction by this court, of which the said J. Jenkins Hucks and Frank Hucks were well aware at the time of such trespasses; that the said trespasses were committed by the said J. Jenkins Hucks and Frank Hucks willfully, knowingly, and deliberately, and in defiance of the injunction of this court in the above-entitled cause."

It will be noticed that this is a proceeding essentially different from the others above referred to. The former proceedings were on petitions based on the special prayer of the bill. This makes no reference to that prayer, and simply states the facts of the trespass and the violation of the injunction.

A return was made by each of these parties, each adopting identically the same return. Leaving out the formal parts, the return is as follows:

"And for a further return to the said order and rule, this respondent, not admitting the allegations contained in the affidavits of James R. Powell, filed herein, and upon which the said order is based, says that he is advised by his counsel, and respectfully submits, that, even admitting said allegations to be true (which, however, he does not admit), there is no order or decree in this cause, whether of injunction or otherwise, which in any way binds or affects this respondent, and that this court is without jurisdiction to issue the order and rule of December 11, 1902, or to enforce it against the person of this respondent in this cause, because he says that this is a civil case between private individuals, wherein the complainants claim to be in lawful possession, under lease from a landlord holding title, of certain marsh and high lands upon which the defendants were alleged to be trespassing at the date of the filing of the said bill, to wit, on October 31, 1893; that the original bill herein prayed only an injunction 'directed to the said Edmund A. Caines, Archy Thompson, Aleck Thompson, W. B. Smith, and George Mills,' the defendants named in the bill; this injunction was asked solely for the individual benefit and protection of the complainants; that the preliminary injunction granted by this court, and made permanent by its final order and decree in the cause, filed March 19, 1895, only provided 'that the defendants, Edmund A. Caines, Archy Thompson, Aleck Thompson, W. B. Smith, and George Mills, be, and each and every one of them is, hereby restrained and enjoined from trespassing,' etc.; that said injunction thus, in terms, failed to be extended against any parties other than the named defendants, nor could it have been of effect against any such other persons than the parties defendant, their agents, employés, etc., even if general words to this effect had been used; that the term of the court at which the

final decree was rendered adjourned sine die on the 30th day of March, 1895, and that thereupon the said decree passed beyond the control of this court, and could not by it be modified, extended, or discharged, save, perhaps, by bill of review properly filed, which has not been done; that this respondent is not a party defendant in this cause, nor is he the agent, employé, or privy either in law or in estate, of any party, nor is his title or claim in any way derived from the defendants, or any or either of them."

This return is practically a demurrer to the jurisdiction and denial that they are liable for contempt. The facts stated in the affidavits must, therefore, for all present purposes, be taken as true—the facts, not the adjectives characterizing them.

Contempt of court is a specific criminal offense. The judgment is a judgment in a criminal case. In re Swan, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207. The rules in this case are based on affidavit. To the affidavit we must look for the indictment. These respondents are charged with shooting ducks on these marshes and in Duck creek —one of the creeks mentioned held by the court to be, with the marshes, exclusive property of the complainants. From the posted notices they had full notice of the existence of the injunction and of the order of this court. The bill upon which the original injunction was granted was directed against the parties named in the bill. The bill prayed leave to add other parties also charged with confederating with Caines, before then unknown, on the discovery of their names. The affidavits now under consideration do not charge these respondents with combining and confederating with Caines and the others named with him, nor do they charge them with being agents or attorneys of them, or any of them. They do charge that the injunction ran against all persons whomsoever trespassing on these marshes. There can be no doubt that, in granting full relief under the original bill, the court, whilst entering final judgment against the parties named, could, in accordance with a prayer like this in the bill, as to parties then unknown, on proper application at the foot of the decree, enter orders binding on the parties then unknown, whose names, when discovered, were brought to the attention of the court; that is to say, parties charged with conspiring and confederating with Caines and his associates. To this extent the general words "all persons whomsoever" certainly could be used and applied. Can they be extended further, so as to reach these respondents who are not charged in the affidavits with combining and confederating with Caines and others?

There are cases in which, because of the great number of the persons against whom relief is sought, who ordinarily would be made parties, complainants are allowed to select some as the representatives of the class, and a decree made thereon would bind all who come within the class. U. S. v. Old Settlers, 148 U. S. 480, 13 Sup. Ct. 650, 37 L. Ed. 509. "In this class of cases there is usually a privity of interest between the parties. But such privity is not the foundation of the exception. On the contrary, it is sustained in some cases when no privity exists. However, in all of them there always exists a common interest or a common right which the bill seeks to establish and enforce, or a general claim or privilege which it seeks to establish or to narrow or to take away." Story, Eq. Pl. § 120. See, also, Mit-

ford on Pl. § 170. The reason is given by Story in the book above quoted (section 285): "For in all of them there is a common interest centering in the point in issue in the cause." In the original suit the issue was as to a common interest of the public in these lands. The defense rested wholly on that. The issue in the case was, have the complainants an exclusive right to these marshes, or was that right subordinate to the interest of the public? The case was ably and learnedly presented and argued. The conclusion was reached after careful consideration. But in a note, "x," to the page quoted from Mitford, Pl., above, it is said, "Where it is attempted to proceed against some individuals representing a numerous class, it must be alleged that the suit is brought against them in such representative capacity." For this is quoted as authority 5 Maddox, 13. There is no such allegation in the original bill. It is true that the state came into the suit because of this alleged public right. But she withdrew before the issue was decided, leaving the individual defendants to defend themselves, disclaiming the public right. It can very reasonably, therefore, be said that these respondents were not parties nor privy in the original suit. They had ample notice, however, that the court had by decree established the exclusive right of the complainants in these marshes, and that by its process of injunction it had sought to protect its decree. In despite of this, they invaded the marshes covered with notices of the action of the court.

A person may be in contempt either by violating an express restraining order issued to him in a suit to which he was a party by name or privity, or by adequate representation, or, if he be not such a party to the suit, he may be in contempt either by aiding or abetting a party to the suit in disobeying or resisting the injunction, or by independently and intentionally interfering with and preventng the execution of the decree of the court, thereby thwarting the administration of justice, rendering nugatory its action, and contemning the authority of the court. "It is entirely consonant with reason, and necessary to maintain the dignity, usefulness, and respect of a court, that any person, whether a party to a suit or not, having knowledge that a court of competent jurisdiction has ordered certain persons to do or abstain from doing certain acts, cannot intentionally interfere to thwart the purposes of the court in making such order. Such an act, independent of its effect upon the rights of the suitors in the case, is a flagrant disrespect to the court which issues it, and an unwarrantable interference with and obstruction to the orderly and effective administration of justice, and, as such, is and ought to be treated as a contempt of the court which issued the order." In re Reese, 47 C. C. A. 90, 107 Fed. 942. The record shows that on the same day, engaged in the same practices, McQuade, McDonald, Johnson, Tamplet, J. Jenkins Hucks, and Frank Hucks entered on the territory of the complainants, shooting and trespassing. They had around them everywhere notices that the court had declared this territory the exclusive property of complainants, and had enjoined all persons from going upon, shooting over, and trespassing upon these marshes. It would not be going too far to believe that there was a concert of action between these men, led by one of them who was a

lawyer and trial justice. They paid no regard whatever to these notices. One would have supposed that J. Jenkins Hucks, Esq., a member of the bar, would have known better; that at least he would not have encouraged by his example such a disregard of the decree of this court. True, it was a circuit decree. But it was a decree in the full exercise by the court in its jurisdiction, and was made, certainly, within its jurisdiction; a decree rendered after full consideration and argument from both sides; and a decree, until reversed by some appellate tribunal, is the law within this jurisdiction, entitled to full faith and credit. Johnson Co. v. Wharton, 152 U. S. 256, 14 Sup. Ct. 608, 38 L. Ed. 429. One would suppose, from all that occurred in this case, that a member of the bar would not stand upon his opinion against the decree of a court, preferring his private judgment to a solemn adjudication. Wellesley v. Mornington, 11 Beavan, 181, is a case cited with approval both in the Circuit Court in Phillips v. Detroit, Fed. Cas. No. 11,101, and then by the Supreme Court in Ex parte Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110, and also in American Steel & Wire Co. v. Wire Drawers' & Die Makers' Union (C. C.) 90 Fed. 598. In this case an injunction was granted against A., restraining him from cutting timber, but it did not include either his agents or servants. B., who was the agent of A. with full knowledge of the injunction, cut the timber. Held, B. might be committed for the contempt, though not for the breach of the injunction. This, clearly, was the principle which induced the Supreme Court, in Re Lennon, 166 U. S. 554, 17 Sup. Ct. 658, 41 L. Ed. 1110, to state, without qualification, this proposition:

"To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice."

The purpose of proceedings for contempt is not to afford a remedy to the party complaining, and who may be injured by the acts complained of. Its purpose is to vindicate the authority and dignity of the court. Vanzandt v. Argentine Min. Co. (C. C.) 48 Fed. 771. The question we are discussing was elaborately reviewed in Seaward v. Paterson [1897] vol. 1, Law Rep. Chan. Div. 549, etc. It first came up before Lord North, one of the judges of the high court attached to the Chancery Division, and went up by appeal to the Lord Justices of the Court of Appeals. The judge below and all the judges of the Court of Appeals took the same view of the question in careful opinions. Each of them answered and overruled the position taken by counsel for the respondent, which was "that there was no jurisdiction to commit for breach of an injunction a person who is not enjoined by it, who is not a party to the action, and who is not even a servant or agent of the person enjoined. There has been no contempt by interference with an officer of the Court. No one can be committed for a breach of an injunction who is not a party to the injunction, and enjoined by it." Each judge declares that this is not a correct statement of the law. In the course of his discussion, Justice Lindley said:

"Let us consider what jurisdiction the court has to make an order against Murray. There is no injunction against him. He is no more bound by the injunction granted against Paterson than any other member of the public. He is bound, like other members of the public, not to interfere with, and not to obstruct, the course of justice; and the case, if any, made against him, must be this: not that he has technically infringed the injunction, which was not granted against him in any sense of the word, but that he has been aiding and abetting others in setting the court at defiance, and deliberately treating the order of the court as unworthy of notice. If he has so conducted himself, it is perfectly idle to say that there is no jurisdiction to attach him for contempt, as distinguished from a breach of the injunction, which has a technical meaning."

Then, later on, in differentiating a dictum of Lord Iveson v. Harris, 7 Vesey, Jr., 251, he says:

"The law is defined in a way which is familiar to anybody accustomed to the procedure in chancery. A motion to commit a man for breach of an injunction, which is technically wrong unless he is bound by the injunction, is one thing; and a motion to commit a man for contempt of court, not because he is bound by the injunction by being a party to the cause, but because he is conducting himself so as to obstruct the course of justice, is another and a totally different thing. The difference is very marked. In the one case the party who is bound by the injunction is proceeded against for the purpose of enforcing the order of the court for the benefit of the person who got it. In the other case the court will not allow its process to be set at naught and treated with contempt."

The returns made to the rule in these cases are insufficient.