THE STATE OF KANSAS, *ex rel. Chiles C. Coleman, as Attorney-general,* v. THE CITY OF PITTSBURG *et al.*

No. 15,278.

### SYLLABUS BY THE COURT.

CONTEMPT—*Attempt to Defeat the Purpose of an Order—Parties—Fines.* The court rendered a final judgment ousting a city from the exercise of the unwarranted power of in effect licensing the sale of intoxicating liquors under the guise of collecting fines by simulated prosecutions for the violation of the prohibitory law. To evade the effect of the judgment a number of saloon-keepers raised a fund from which they for a time paid the salaries of some of the city's officers and employees. *Held,* that all concerned in the carrying out of this arrangement, whether or not they are to be regarded as having violated an injunction directed against them, are guilty of contempt of court in virtue of their having attempted to defeat the purpose of the judgment.

Original proceeding for contempt. Opinion filed October 9, 1909. Defendants adjudged guilty.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for The State.

The opinion of the court was delivered by

MASON, J.: In 1906 an action was brought in this court in the name of the state on the relation of the attorney-general against the city of Pittsburg to put an end to the unlawful practice alleged to exist there of in effect licensing the sale of intoxicating liquors, under the guise of collecting at regular intervals fines for the infraction of the prohibitory law. A commissioner was appointed, who filed a report May 13, 1907, sustaining the allegations of the petition. A final judgment was rendered July 5, 1907, ousting the city from the exercise of the unwarranted power of deriving a revenue from the liquor traffic, and forbidding all municipal officers and agents from engaging in the prac-

tice referred to. (*The State v. Pittsburg,* 77 Kan. 848.)
In November, 1907, the attorney-general filed affidavits
stating that certain officers of the city and others were
engaged in conduct the purpose and effect of which
was to nullify or evade the force of such judgment.
Citations were issued against and served upon the per-
sons named, and formal accusations were filed charging
them with contempt of court. They answered denying
the charges, and a commissioner was appointed to take
evidence and make findings upon the issues so joined.
The report of the commissioner shows these facts,
among others:

The city council appropriated no money for the pay-
ment of policemen or firemen for the months of June,
July, August, September, October and November, 1907.
By the contributions of a number of saloon-keepers
during these months a fund was raised which was
placed in the control of one Frank Linski, a resident of
Pittsburg who was engaged in the wholesale liquor
business in Missouri. The contributors referred to
themselves as the members of a lodge, and to Linski as
its treasurer, but such organization as existed had no
other purpose than the collection and disbursement of ·
this fund. Linski paid the salary of the police judge
and of the policemen and firemen out of this fund for
several months, taking from them in some instances
purported assignments of their claims against the city;
at other times taking mere receipts.

Even this bare outline sufficiently establishes what
the detailed evidence confirms—that all the parties to
the transactions referred to were engaged in an at-
tempt to evade the court's order and to render its judg-
ment ineffectual. That they are liable to punishment
for contempt is too clear to require extended discussion.

"Where the mandate of the court has been violated in
spirit as well as in letter, the court will not permit the
general terms of the writ to be controlled or restricted
by reference to the particular nature of the grievance.
Nor will the court permit defendants to evade respon-

sibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing." (2 High, Injunc., 3d ed., § 1433.)

True, the contemnors were not parties to the original action, but this is not necessary. (22 Cyc. 1012; *The State v. Cutler,* 13 Kan. 131.) The order against the city necessarily operated upon individuals. It ran in terms against any officers or agents. Unofficial persons who acted in behalf of the city were none the less its agents in this respect because they were not formally employed for this purpose. (*Hamilton v. Diamond Drill & Machine Co.,* 69 C. C. A. 532, 137 Fed. 417.) No official notice of the order was necessary. If actual notice was not inferable from the publicity of the proceedings, knowledge of the rendition of the judgment follows from the efforts made to evade it, which had no other possible purpose. Whether or not all who participated in these efforts are to be regarded as having violated an injunction directed against them, they are guilty of contempt of court in virtue of their having attempted by artifice and evasion to render the judgment nugatory, an act as plainly contemptuous toward the court as an interference with its process would be. (9 Cyc. 20; *United States v. Shipp,* 203 U. S. 563.)

"It is entirely consonant with reason, and necessary to maintain the dignity, usefulness and respect of a court, that any person, whether a party to a suit or not, having knowledge that a court of competent jurisdiction has ordered certain persons to do or to abstain from doing certain acts, can not intentionally interfere to thwart the purposes of the court in making such order. Such an act, independent of its effect upon the rights of the suitors in the case, is a flagrant disrespect to the court which issues it, and an unwarrantable interference with and obstruction to the orderly and effective administration of justice, and as such is and ought to be treated as a contempt of the court which issued the order." (*In re Reese,* 47 C. C. A. 87, 90.)

This proposition was thus applied in *Garrigan v.. United States*, 89 C. C. A. 494:

"As it is neither charged nor proven that the plain-- tiff in error was one of the parties enjoined, he is not. chargeable for breach or violation of the injunction, in the well-recognized sense of those terms applicable to parties.  He was bound, alike with other members of the public, to observe its restrictions when known, to the extent that he must not aid or abet its violation by others, nor set the known command of the court at defiance, by interference with or obstruction of the administration of justice; and the power of the court to proceed against one so offending and punish for contemptuous conduct is inherent and indisputable." (Page 498.)

It remains to consider the penalty to be assessed against each of the persons found guilty of contempt. Of those now before the court who were engaged in carrying out the device to evade its mandate Frank Linski bore the chief responsibility, and it is natural and proper that he should bear the largest measure of punishment.    Of him the commissioner pertinently says:

"By reason of the fact that the defendant Frank Linski was an honest man and could be trusted with the money, he had the unsolicited honor of being chosen as custodian and disbursing agent of the funds collected under the aforesaid arrangement; and it may be· added that he was very reluctant to perform the service, and only consented when assured by the very first men of the city that everything had been fixed up and there would be no trouble, and this last assurance, while it should be considered in palliation of Linski's offense, at the same time seems to bring home to him the matter of notice and knowledge of the judgment and order of the court, as that was the very thing, and the only thing, that was in the minds of all who talked about having been in Topeka or were going to Topeka to fix things.   There was nothing else to fix; people who told Linski that they had fixed things, or would fix things, at Topeka, knew that there was nothing that they or any one else could fix, and all that kind of talk by men who did know better to men who did not know better

was all a part of the general scheme to keep the money coming in in utter violation of the judgment and order of the court." ·

A fine of $1000 will be imposed upon him. Next to him the other contributors to the fund are deemed the most serious offenders, and a fine of $500 will be assessed against each of them. They are: Adam Kazmierski, Peter Barani, W. S. Stroud, John Simion, Joseph Valentine, John Welch, Pete Comiskey, Simon Wirnsberger, A. N. Stroud, John Tangye, B. W. Brown, and W. H. Conlon. The police judge, J. E. Holden, was not shown to have taken part in the objectional transaction further than by receiving his own salary from the saloon-keepers. His fine will be fixed at $100. The policemen, being specially charged with the enforcement of the law, should properly incur a greater penalty for its violation than the firemen. Their fine will be made $50 each, and that of the firemen $25 each. The policemen concerned are: S. M. Lawler, E. T. Carter, E. M. King, J. E. Walker, J. J. Leemaster, Charles M. Fisher, and Charles Phillips. The firemen are: T. W. Howe, J. T. Atkinson, Marion Robertson, George White, William Doss, F. O. Robinson, Peter Cordray, and Walter Stanfill. Payment of these fines will be enforced by commitment to the county jail of Shawnee county.