# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1913.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER,    } JUSTICES.
HON. ALFRED W. BENSON,
HON. JUDSON S. WEST,

THE STATE OF KANSAS, ex rel. FRED S. JACKSON, as Attorney-general, etc., *Plaintiff*, v. THE CITY OF COFFEYVILLE et al., *Defendants.*

No. 15,811.

HEADNOTE BY THE REPORTER.

CONTEMPT—*Injunction—Cities and City Officers—Notice.* Where a city and its officers have been permanently enjoined from licensing lawbreakers and doing other illegal acts, city officers who subsequently take possession of the offices of such city are ordinarily bound to take notice of such injunction, and especially where the acts enjoined are in themselves public offenses.

Original proceeding for contempt. Opinion filed July 5, 1913. Defendants adjudged guilty.

*John S. Dawson,* attorney-general, for the plaintiff; *Hal R. Clark,* of Independence, and *J. P. Coleman,* of Topeka, of counsel.

*J. B. Tomlinson,* and *Charles D. Shukers,* both of Independence, for the defendants.

The State, *ex rel.*, v. City of Coffeyville.

*Per Curiam:* On July 3, 1908, a judgment of this court was entered permanently enjoining the city of Coffeyville, its officers and agents, from licensing persons to sell liquor or to maintain places for the sale thereof by levying fines in simulated prosecutions or other makeshifts and devices, and also from licensing bawdy houses and disreputable places of like character, and from all attempts to set at naught the laws of the state enacted for the suppression of the sale of intoxicating liquor and for the suppression of prostitution and of houses of ill fame. (*The State v. Coffeyville,* 78 Kan. 599, 97 Pac. 372.) On September 10, 1912, on complaint of the county attorney that the injunction was being violated by the officers of the city a citation for contempt was issued accusing the mayor, the chief of police and four policemen with violating the judgment of injunction. A denial of the charges was made by the respondents. A commissioner was appointed to take evidence and to make findings of fact and conclusions of law thereon. This was done, and the commissioner found, upon what appears to be sufficient evidence, that five of these officers attempted to set at naught the intoxicating liquor laws of the state as well as those for the suppression of prostitution and of houses of ill fame, that during their incumbency of office they took and received from a number of persons in the city sums of money for the privilege of remaining inmates of houses of ill fame and also as license fees for the privilege of selling intoxicating liquor as well as for keeping and maintaining places where intoxicating liquors were kept and sold. There was no finding of a violation of the judgment by respondent Donnelly.

The respondents contest the sufficiency of the evidence and contend that they were not given sufficient notice of the injunction. The injunction violated was not a preliminary order but was the final judgment in an action in which notice was given and wherein the city appeared and defended. The judgment rendered was

against the city and its officers, and forever enjoined them from doing the prohibited acts. The things done by respondents were not only violations of the permanent injunction but were plain violations of statutory law. In *The State v. Porter,* 76 Kan. 411, 91 Pac. 1073, 13 L. R. A., n. s., 462, a permanent injunction was granted prohibiting certain parties and all others from maintaining a liquor nuisance in a building and it was held that it constituted a judgment of which owners, tenants and occupants must take notice and that no actual knowledge or notice is necessary to a prosecution for the violation of the judgment. There are equally good reasons for holding that officers who take possession of the offices of a city that has been permanently enjoined from licensing lawbreakers and doing other illegal acts are bound to take notice of the judgment, and especially where the acts are in themselves public offenses. But whether we regard notice to be a matter of right or only give it consideration in determining the punishment for violations of the injunction, the respondents must be deemed to have had knowledge of the injunction. The evidence in the case practically brings it within the rule of *The State v. Pittsburg,* 80 Kan. 710, 104 Pac. 847, 25 L. R. A. n. s., 226, 133 Am. St. Rep. 227, in which it was held that it was not necessary that the respondents should have been parties to the original action and that "No official notice of the order was necessary. If actual notice was not inferable from the publicity of the proceedings, knowledge of the rendition of the judgment follows from the efforts made to evade it, which had no other possible purpose." (p. 712.)

The proceeding against the city, with the result reached, necessarily attracted general attention of the people and could not easily escape the knowledge of those who were in control of city affairs or who shortly afterwards came into control. The respondents came into office in April, 1911, about two years and nine

months after the judgment was rendered. It appears, too, that the mayor had served an earlier term since the judgment, only a year intervening between the former and the present term. These facts and the efforts made to cover up the violations of the judgment and to evade its effects gave good ground for the inference that respondents had knowledge of the judgment. As was said in *The State v. Porter,* 76 Kan. 411, 91 Pac. 1073, 13 L. R. A., n. s., 462:

"In willfully embarking upon an unlawful business they might well be presumed to have scanned every possible source of danger and to have not overlooked so public a proceeding as the injunction suit." (p. 413.)

There is no reason to complain of the filing of the supplemental charges after the hearing was begun, as respondents were not denied an opportunity to meet them; nor is there any doubt as to the identity of the transcript upon which the abstracts of counsel on both sides are based and the arguments of counsel are founded. Detailed findings of fact were made by the commissioner which show repeated violations of the injunction by each of the respondents, and while the findings are attacked as unsupported by testimony, and also that testimony was given by witnesses unworthy of belief, a reading of the testimony leaves no doubt that the respondents are guilty of violating the judgment of injunction.

E. C. Rice, Fred Wannenwetsch, J. H. Fletcher, H. A. Thacker and P. K. Smith must, therefore, be adjudged to be in contempt. In assessing the punishment regard must be had to the authority vested in and the duties required of the several officers. Considering the greater power and larger responsibility of E. C. Rice, the mayor, and Fred Wannenwetsch, the chief of police, a fine of $500 will be assessed against each of them. The policemen, who held subordinate places and consequently had less responsibility, should

not suffer so heavy punishment as the others, and hence fines of $100 each will be assessed against J. H. Fletcher, H. A. Thacker and P. K. Smith. Payment of these fines will be enforced by commitment in the county jail of Montgomery county.