DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 14180. Department Two. November 12, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. MAY TERRY, *Appellant*, GUISEPPE COLANZELO *et al., Defendants.* [1]

NUISANCE—ABATEMENT—INJUNCTION—PARTIES BOUND — NOTICE— DISORDERLY HOUSES. An injunction under the red light law, Rem. Code, § 946-4, abating the nuisance and enjoining the illegal use of the premises by the defendants, their agents, and servants, and all other persons, operates *in rem* against the specific property, and is constructive notice and binds all persons thereafter dealing with the property.

SAME — ABATEMENT — INJUNCTION — NOTICE — EVIDENCE — SUF- FICIENCY. Actual notice of an injunction against the illegal use of premises is shown by evidence that defendant, an inmate of the under-world, had stated that she knew the place was closed up and "red lighted" and she admitted that she knew the place had been "in trouble."

LIS PENDENS—OPERATION—NECESSITY OF FILING. Notice of *lis pendens* is effective only before decree, and does not import into the decree a character affecting property *in rem* which it would not otherwise possess.

WITNESSES—CREDIBILITY—CHARACTER. In contempt proceedings for violating an injunction in a red light case, the fact that defendant was a prostitute conducting an unlawful establishment may be considered in passing upon her credibility as a witness.

NUISANCE—ABATEMENT—COMPLAINT — INJUNCTION — SUFFICIENCY. A prayer for the abatement of a disorderly house enjoining the defendants, their agents and servants, and perpetually restraining the

[1] Reported in 168 Pac. 513.

practice of prostitution therein, and for such other relief as may seem proper, is sufficient to sustain an injunction against the defendants and all persons claiming by, through or under them and all other persons.

SAME—ABATEMENT—JUDGMENT—PUNISHMENT. A sentence against a prostitute for a flagrant violation of an injunction under the red light law, of less than half the maximum permitted by law, will not be held excessive because the fine against the owner was remitted on extenuating circumstances.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 9, 1916, upon a conviction of contempt in violating an injunction under the red light law. Affirmed.

*Gill, Hoyt & Frye*, for appellant.

*Alfred H. Lundin* and *Lane Summers*, for respondent.

ELLIS, C. J.—Defendants were charged with contempt in violating, with knowledge and notice thereof, a permanent injunction issued from the superior court of King county on November 2, 1915, in a red light abatement case. Defendants Colanzelo were the owners of the property involved; defendant Terry their tenant. The proceedings were by information, attachment, arrest, and trial before the court without a jury upon oral testimony pursuant to Rem. Code, § 946-4. The cause was dismissed as to defendant Rosa Colanzelo. The other defendants were adjudged guilty. Defendant Guiseppe Colanzelo was fined $200. On a showing which the trial court deemed sufficient, his fine was afterward remitted. Defendant Terry was fined $300 and sentenced to serve three months in the county jail. She moved for a new trial. The motion was overruled. She appeals.

The decree in the original abatement case, so far as here material, was as follows:

"Now, therefore, it is hereby considered, ordered, adjudged and decreed that defendants . . . and each of them, and their agents, servants and all other persons acting by, through or under them, and all other persons whatsoever, be,

and they hereby are perpetually restrained and enjoined from causing, participating in or permitting, directly or indirectly, any act of lewdness, assignation or prostitution in, about or upon the property hereinafter described; and that the land, and buildings thereon, and its contents, all hereinafter described, be, and the same hereby are declared a nuisance and forever enjoined as such; and that any and all acts of lewdness, assignation or prostitution, or practice thereof and the resort thereto, in, about and upon said property, be, and the same hereby are prohibited and enjoined at any and all times."

Appellant was not a party to that suit, and it is admitted that she was never served with a copy of the final decree rendered therein. She contends that she was not properly subject to summary punishment for contempt, (1) because she was not a party to the abatement proceedings, (2) because no copy of the injunctional order was served upon her, (3) because the evidence of actual knowledge of the injunction on her part was insufficient, and (4) that in any event the punishment imposed was excessive.

It may be stated, as a general rule, that one not a party to the injunction suit cannot be charged with contempt in violating the injunction, in the absence of service upon him of the injunctional order or a showing that he had actual knowledge thereof. *Garrigan v. United States*, 163 Fed. 16, 23 L. R. A. (N. S.) 1295. To this general rule, there is, however, an exception, resting in sound reasons and supported by authority. Where the decree of injunction is not only *in personam* against the defendants in the injunction suit, but also operates *in rem* against specific property, or rather against a given illegal use of such property, the decree is a limitation upon the use of the property of which all subsequent owners, lessees, or occupants must take notice. In such a case the decree, if broad enough in its terms to enjoin all persons, is sufficient as a public record to impart constructive notice to all persons. The following cases so holding are based upon statutes declaring premises used for the un-

lawful sale of intoxicating liquors to be nuisances and authorizing perpetual injunctions to be entered against the use of such places for such purposes. The only essential difference between the statutes involved and our red light law is in the character of the use prohibited. *Silvers v. Traverse,* 82 Iowa 52, 47 N. W. 888, 11 L. R. A. 804; *Dermedy v. Jackson,* 147 Iowa 620, 125 N. W. 228; *Seidlitz v. Jackson* (Iowa), 125 N. W. 230; *State v. Porter,* 76 Kan. 411, 91 Pac. 1073, 13 L. R. A. (N. S.) 462, and note. See, also, 6 R. C. L. p. 504, § 16.

Appellant cites and relies upon the more recent Iowa case of *Harris v. Hutchinson,* 160 Iowa 149, 140 N. W. 830, 44 L. R. A. (N. S.) 1035, urging that it limits the earlier Iowa decisions to cases in which the filing of a complaint affecting real estate operates under a general statute of that state as a notice of *lis pendens,* and therefore argues that an injunctional decree binding real estate in this state cannot be effective as against third parties unless *lis pendens* was filed when the injunction suit was commenced. Obviously this is only true as to persons dealing with the property pending suit and before decree. Neither the statute of this state providing for the filing and lien of notice of *lis pendens,* nor the statute of Iowa giving the same effect to the filing of a complaint affecting real estate was ever intended to import into the final decree a character as affecting property *in rem* which it would not otherwise possess. As to persons dealing with the property subsequent to decree, it is the character of the decree which determines their rights. If it is a decree *in rem,* it binds not only the parties, but third persons. This is recognized in the case of *Harris v. Hutchinson.* Speaking of the earlier case of *Silvers v. Traverse, supra,* it is there said:

"It is true that in this opinion the following words were used: 'The decree was sufficiently broad in its terms to enjoin all persons from maintaining a nuisance on the premises therein described, and it was sufficient, as a public record, to impart constructive notice to all persons.' It is evident that

those words were used with reference to the facts in that particular case, and where it says, 'It was sufficient as a public record to impart constructive notice to all persons,' it evidently meant, and should be understood as meaning, all persons dealing with the property as purchaser, or lessee, or dealing with the property itself."

The sum of the decision in *Harris v. Hutchinson* is that a person employed as a bartender by the occupant of premises which had been enjoined from use for saloon purposes is not affected with constructive notice of the decree so as to be subject to a charge of contempt for violating it, and this simply because he is not a person dealing with the property itself either as a purchaser or lessee or occupant. It does not overrule or modify the decision in *Silvers v. Traverse*, *supra*, but distinguishes it on that ground alone, clearly recognizing as sound and impliedly reaffirming the doctrine of the *Silvers* case.

The exception to the rule requiring notice of the injunction in order to bind third persons is not peculiar to injunctions against liquor nuisances. Where the injunction is *in rem* affecting specific property, it binds not only the parties to the suit, but persons in privity with such parties as subsequent purchasers and lessees. *Ahlers v. Thomas*, 24 Nev. 407, 56 Pac. 93, 77 Am. St. 820; *Harris v. Hutchinson, supra;* 2 High, Injunctions (4th ed.), § 1440a. See, also, *State ex rel. Jackson v. City of Coffeyville*, 90 Kan. 164, 133 Pac. 711.

The Iowa liquor nuisance law is the direct progenitor of our red light law. *State ex rel. Kern v. Jerome*, 80 Wash. 261, 141 Pac. 753. A reading of the red light law (Rem. Code, § 946-1 *et seq.*), makes it too plain for cavil that the proceedings for perpetual injunction thereunder, so far as they are directed against specific property, are proceedings *in rem*. We have already so construed that law. *State ex rel. Kern v. Emerson*, 90 Wash. 565, 155 Pac. 579, L. R. A. 1916F 325; *State ex rel. Dow v. Nichols*, 83 Wash. 676, 145 Pac. 986; *State ex rel. Kern v. Jerome, supra*.

We are clear that appellant's first two contentions are unsound. The decree being *in rem* reaches further than the parties named as defendants. It abates and perpetually enjoins the nuisance and to that end reaches the property itself and binds all persons thereafter dealing with the property. *Silvers v. Traverse, supra.* As said by the supreme court of Kansas in *State v. Porter, supra:*

"The decree of injunction was against the defendants in that suit, and, in a sense, was *ad rem*—against the property, or rather against a certain illegal use of the property. It cut off perpetually the use of the property for any of the purposes which the prohibitory liquor law of this state denounces as a nuisance. Thereafter not only the parties to that action, but all persons using the property for any of such unlawful purposes, did so at their peril. The judgment is a limitation upon the use of the property of which all subsequent owners or occupants must take notice."

The foregoing language of the Kansas court is obviously just as applicable to cases arising under our red light law as to those under the Kansas liquor law. To hold otherwise would be to render the perpetual injunction authorized by our statute an empty formality through the ease with which it might be avoided by the mere leasing of the property.

But we find it unnecessary to rest our decision entirely upon the constructive notice imposed by the decree itself. We have attentively examined the evidence. We are satisfied, as was the trial court, that appellant had actual knowledge of the injunction prior to the commission of the acts which led to her arrest. An assistant prosecuting attorney testified that, soon after her arrest, he asked her if she did not know that the place had been red lighted and the injunction issued, and that she answered, "Yes; I know the place was closed up and red lighted last year." True, as a witness in her own behalf, she denied making this admission, but testified that she did say that she knew the place had been in trouble. She was an experienced habitue of the under-

world.  It is hardly conceivable that she did not know of the
stringent provisions of the red light law, and what it meant
for specific property to be "in trouble."  The very fact that
she admitted at the present trial that she knew the property
had been in trouble is strongly corroborative of the assistant
prosecuting attorney's testimony that she told him she knew
it had been red lighted.  True, also, a police officer who
claimed to have heard a part of the conversation but admitted
that he paid no attention to it, rather lamely corroborates
her version of it, but his memory as to what was said was so
vague and his testimony so uncertain as to render it fairly
negligible.  The fact that appellant at the time of her arrest
was, and for some time prior thereto had been, engaged in
soliciting and practicing prostitution and conducting an es-
tablishment for that purpose in the premises here in question
was proven by overwhelming evidence.  While the fact that
such conduct wherever practiced is in itself a crime cannot
be taken into consideration as in itself tending to prove guilt
in a contempt case such as this, it nevertheless may be and
should be considered in passing upon appellant's credibility
as a witness.  *State v. Coella*, 3 Wash. 99, 28 Pac. 28.  Since
the evidence as to her admission of knowledge was practically
confined to her testimony and that of the assistant prose-
cuting attorney, we feel warranted in giving credence to the
latter.  Though appellant was not a party to the decree and
was never served with a copy of it, her actual knowledge of
the injunction renders her liable to punishment for contempt
in violating it.  *Ex parte Lennon*, 166 U. S. 548; *United
States v. Sweeney*, 95 Fed. 434; *Chisholm v. Caines*, 121 Fed.
397; *Ex parte Richards*, 117 Fed. 658; *Seattle Brewing &
Malting Co. v. Hansen*, 144 Fed. 1011; *Puget Sound Trac-
tion, Light & Power Co. v. Lawrey*, 202 Fed. 263; *People ex
rel. Aldinger v. Pugh*, 57 Hun 181, 10 N. Y. Supp. 684;
*In re Coggshall*, 100 Mo. App. 585, 75 S. W. 183; *O'Brien
v. People*, 216 Ill. 354, 75 N. E. 108, 108 Am. St. 219;

*Breimeyer v. Star Bottling Co.*, 165 Mo. App. 383, 147 S. W. 526; *State ex rel. Jackson v. Coffeyville*, 90 Kan. 164, 133 Pac. 711; 2 High, Injunctions (4th ed.), § 1440b; 22 Cyc. 1012.

See, also, *Garrigan v. United States*, 23 L. R. A. (N. S.) 1295, note.

Appellant asserts that the complaint in the abatement suit was not broad enough to sustain an injunction against any one except the defendants therein, and their servants and agents, because they alone were specifically named in the prayer. But we think otherwise. The prayer was that the nuisance be perpetually enjoined and that a permanent injunction be issued not only against the defendants, their servants and agents, but also "against said ground and said building thereon, perpetually restraining the practice of or resort to prostitution thereon or therein," and also "that such other relief be granted to the plaintiff as to the court seems just and proper." Such a prayer has been held sufficiently broad to sustain a decree enjoining the illegal use of the premises "by said defendants and any person or persons claiming by, through, or under them or either of them, and all other persons" which is substantially the same as the decree here involved. *Dermedy v. Jackson*, 147 Iowa 620, 125 N. W. 228. Moreover, it has been held that the fact that the terms of an injunction are broader than the bill is no defense in a proceeding to punish for contempt in violating the injunction. *O'Brien v. People*, 216 Ill. 354, 75 N. E. 108, 108 Am. St. 219; *State v. Ragghianti*, 129 Tenn. 560, 167 S. W. 689.

Nor can we say that the punishment imposed was excessive. It was considerably less than half the maximum permitted by the statute. Rem. Code, § 946-4. We find no merit in the argument that appellant should be lightly punished because the fine imposed against the owner of the premises was remitted. There were extenuating circumstances in his case which are not found in that made against appellant. If she

had knowledge of the injunction, and we think she did, her disregard of it was flagrant and without palliation.

The judgment is affirmed.

MOUNT, PARKER, FULLERTON, and HOLCOMB, JJ., concur.