[No. 11697.   Department One.   June 29, 1914.]

THE STATE OF WASHINGTON, *on the Relation of F. A. Kern,*
*Prosecuting Attorney etc., Respondent,* v.
MARGARET JEROME *et al., Appellants.*[1]

NUISANCES—DISORDERLY HOUSE—ACTION TO ABATE — DEFENSES— ABATEMENT BY PARTIES—GOOD FAITH—EVIDENCE—SUFFICIENCY. In a prosecution under the "Red Light Law," 3 Rem. & Bal. Code, § 946-1 *et seq.*, a permanent abandonment, in good faith, of the use of a house for the purposes of prostitution, is not shown so as to warrant the court in denying a permanent injunction against the premises, where the facts merely show a hasty change in existing conditions after the prosecution was instituted, coupled with a declaration by the parties not to again engage in or permit the business at the place in question.

SAME—ACTIONS TO ABATE—PROCEEDINGS—TAX—LIABILITY ON RE-LEASE BY BOND. The giving of a bond to abate a prosecution under the "Red Light Law" does not relieve the property from the tax of $300 assessed against the property, in view of 3 Rem. & Bal. Code, § 946-7, which provides that the court may cancel the order of abatement and deliver the premises to the owners upon the filing of a bond to abate the nuisance and prevent its renewal for a period of one year, provided that the release of the property shall not release it from any judgment, lien, penalty or liability.

TAXATION — UNIFORMITY — CHARGE ON BUSINESS — NUISANCES. 3 Rem. & Bal. Code, § 946-8, providing that in prosecutions under the

[1]Reported in 141 Pac. 753.

"Red Light Law" whenever a permanent injunction issues, a tax of $300 shall be assessed against the building and grounds and against the owners, does not offend against the constitutional provisions providing for uniformity and equality of taxation, since the tax is upon the traffic or business and applies to all persons offending against its provisions.

Constitutional Law—Due Process—Tax—Notice. The "Red Light Law," resulting in a tax against property offending against the law, does not offend against the due process clause of the constitution, since the persons interested are served with process and have their day in court.

Nuisances—Disorderly House—Actions to Abate—Judgment—Penalty—Sale of Property. In providing for the abatement of houses of prostitution, under the "Red Light Law," it was competent for the legislature to require the building to be closed for a period of six months, and to order the personal property used to be sold and applied to the payment of costs.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered August 8, 1913, upon findings in favor of the plaintiff, in an action to abate a nuisance, tried to the court. Affirmed.

*E. K. Brown,* for appellants.

*F. A. Kern* and *Jay Whitfield,* for respondent.

Main, J.—This action was instituted for the purpose of abating a nuisance and obtaining an injunction against its continuance.

The suit was brought under chapter 127, Laws of 1913, p. 391 (3 Rem. & Bal. Code, § 946-1 *et seq.*), known as the "Red Light Law," in the name of the state of Washington, on the relation of the prosecuting attorney of Kittitas county. The defendants were Mary A. Bort and W. H. Bort, her husband, and one Margaret Jerome.

The facts are substantially as follows: At the time of the institution of the suit, and for many years prior thereto, Mrs. Bort was and had been the owner of lots 1 and 2, block 25, in Murray's addition to the city of Ellensburg. Upon these lots had been erected a nine room dwelling house. The

premises were located within the limits of the town known as the "restricted district," prior to the month of May, 1911, when that district was closed by the city authorities. Prior to the closing of the district, the place had been occupied and used as a house of prostitution. From the month of May, 1911, until March, 1913, the premises were vacant and unoccupied. On March 21, 1913, Mrs. Jerome contracted with the Borts for the purchase of the premises. The contract price was $4,000, $250 of which was paid in cash, and the remaining portion was to be paid in installments of $50 per month. Prior to the month of May, 1911, when the district was closed, Mrs. Jerome had occupied and used the same premises as a house of prostitution and paid $75 per month rent therefor. After making the contract of purchase mentioned, Mrs. Jerome entered into possession of the property, and thereafter and until the 28th day of June, operated therein a house of prostitution. During this time, but two prostitutes were in the place, Mrs. Jerome and one other. On the 28th day of June, 1913, both were arrested for practicing prosituation in violation of law. They remained in the house, however, until the evening of the 30th day of June, when they left the place. From the date of their arrest until the abandonment of the premises, prostitution was not practiced by them. On the 30th day of June, the present action was instituted against the Borts and Mrs. Jerome, the latter being served with process while still in possession of the house. On July 1, 1913, the day immediately following the service of the process in this case, by mutual agreement, the contract between the Borts and Mrs. Jerome was cancelled and possession surrendered to the owners. Immediately thereafter, the Borts caused to be removed from the house all personal property therein belonging to them. The house, in its vacant condition, was closed and so remained up to the time of the trial.

The cause was tried in the superior court on July 17, 1913. A judgment was entered as follows: (a) Enjoining

the further practice of prostitution in the house mentioned;
(b) providing that the fixtures and furniture used in connection with the conduct of the house be sold as provided by
law; (c) that the house be closed for a period of six months;
and (d) that the assessor of the county be directed to assess
against the dwelling house and the ground upon which it was
located, and against the defendants in the action, a tax in
the sum of $300. From this judgment, the Borts appeal.

The principal claims of error are: First, the granting of
injunctive relief; second, the refusal of the court to accept
the bond upon the condition that it was offered; third, that
the tax provided for in the judgment offends against both
the equal tax and the due process of law provisions of the
constitution; and fourth, in ordering the sale of the personal
property and closing the house for a period of six months.

I.     The question whether the injunction was properly issued calls for a consideration of the provisions of the law
under which the action was instituted.     The "Red Light
Law" of this state, passed at the legislative session for the
year 1913, is a substantial embodiment of the law passed by
the legislature of the state of Iowa upon the same subject
during the year 1909.     The Iowa law was taken from the
cigarette and liquor laws of that state, reenacting the regulatory and prohibitory provisions of those laws, and making
the same applicable to houses of prostitution.     The law of
this state, among other things, provides, that whoever shall
erect, establish, maintain, continue, use, own, or lease any
building or place for purposes of prostitution, is guilty of a
nuisance, and the building and furniture are likewise declared a nuisance; that whenever a nuisance exists, as defined in the act, the prosecuting attorney, or any citizen of
the county, may maintain an action in equity in the name of
the state to properly enjoin said nuisance and the person or
persons conducting the same and the owner or the agent of
the building or ground upon which the nuisance exists; that,
if the existence of the nuisance be established, an order of

abatement shall be entered as part of the judgment in the case, which order shall direct the removal from the building of all furniture and fixtures used in conducting the nuisance, and that the same shall be disposed of by sale as therein provided and the proceeds used in the payment of the costs of the action and abatement, and the balance, if any, paid to the person owning the property prior to the sale. Other provisions of the law will be noted in connection with the discussion of the points to which they may be applicable.

The Iowa law, while passed in 1909, so far as we are informed, has never been construed by the supreme court of that state. But the liquor and the cigarette laws, which have substantially the same provisions, have frequently been before that court. In *Judge v. Kribs*, 71 Iowa 183, 32 N. W. 324, the court, considering the question as to when an injunction should issue, said:

"The several defendants were witnesses in their own behalf, and severally testified, with more or less directness, that they, after notice of the hearing for the allowance of a temporary injunction was served on them, had quit the business, and, as one of them stated, he had 'reformed.' In all instances, we believe, such reformation occurred a day or two before the hearing. It is upon this ground, we presume, the court refused to grant an injunction. If the nuisance is abated, there is nothing to enjoin, nor would the defendants be in any respect prejudiced if one was granted. But where it is ascertained that one has violated the rights of another, or of the public, by erecting and maintaining a nuisance, does it necessarily follow, because he asserts the nuisance has been abated, that a temporary injunction cannot issue? Suppose there is a small-pox hospital established and maintained in the populous part of a city, and that it is furnished with all the appliances used for properly and judiciously taking care of the patients, and that an application is made to enjoin such use, and abate the nuisance; and, upon the hearing for an injunction, the proprietor should testify that he had quit the business, and removed the patients a day or two prior to the hearing,—would the court be bound for this reason to refuse the injunction? We think not, but, on the

contrary, the court, in its discretion, could restrain the party from so using the building in the future. So here it appears from the evidence that the defendants were engaged in selling intoxicating liquors contrary to law, and kept and maintained a building for that purpose. Upon being advised that an effort was about to be made to vindicate the law, they suddenly reformed and quit the business.

"It appears to us that there is a great reason to suppose such a reformation is not in good faith. There is also reason to believe it was adopted as a temporary expedient. The evidence, we think, tends to show, or, if not, this court does not feel disposed to accept the evidence of the defendants that they have ceased the unlawful sale of intoxicating liquors as conclusive evidence of such fact. Much less do we feel disposed to do so as to the future. Having been engaged in violating the law, it is not by any means certain that they will not do so in the future. The disposition to do so clearly appears, and there are heavy doubts as to the good faith of the reformation."

That decision was rendered in 1887. Thereafter numerous cases were brought before the same court, and in *Tuttle v. Bunting*, 147 Iowa 153, 125 N. W. 844, decided during the year 1910, that court classified its previous decisions and restated the rule in this form:

"Defendants complain of the decree of permanent injunction and also of the order for the abatement of the nuisance. Reliance is placed upon: *Redley v. Greiner*, 117 Iowa 680, 91 N. W. 1033; *Patterson v. Nicol*, 115 Iowa 284, 88 N. W. 323; *Drummond v. Drug Co.*, 133 Iowa 266, 110 N. W. 471; *Sharp v. Arnold*, 108 Iowa 203, 78 N. W. 819; and other like cases in support of the appeal. On the other hand, appellee relies upon *Halfman v. Spreen*, 75 Iowa 309, 39 N. W. 512; *Judge v. Kribs*, 71 Iowa 183, 32 N. W. 324; *Danner v. Hotz*, 74 Iowa 391, 37 N. W. 969; *Donnelly v. Smith*, 128 Iowa 257, 103 N. W. 776; *Drummond v. Drug Co.*, 133 Iowa 266, 110 N. W. 471. The distinction between these cases is that, in one class, the trial court was of opinion that defendants had, in good faith, gone out of the business, and did not intend to again re-engage in it at the place in question or at any other place; while, in the other class, although the defendants had ceased the business and pro-

fessed reformation, the brief time elapsing after the reformation and before trial or other circumstances disclosed were deemed insufficient proof of such repentance as to secure defendants immunity from an injunctional order. The question, after all, is largely one of good faith. In other words, if defendants have, in good faith, parted with the property, have quit the unlawful business, and do not expect or intend to engage in the business of selling liquor unlawfully, there is no occasion for the issuance of the injunction. If, on the other hand, there be doubt as to the defendants' good faith or a question about their repentance, the order will issue to assist in removing the temptation to return to old habits."

The rule of these cases is that, if the proof establishes conclusively that the defendants have in good faith permanently abandoned the business, and do not intend to re-engage in it at the place in question, or any other place, then an injunction should not issue; but if there is a doubt as to whether the business has been permanently abandoned in good faith, it presents a proper case for granting a permanent injunction. In order to show an abandonment in good faith within this rule, it is not sufficient to show that, after the prosecution was instituted, there was a swift change in existing conditions, coupled with a professed declaration not to re-engage in the business. *Judge v. Kribs, supra; Danner v. Hotz,* 74 Iowa 389, 37 N. W. 969; *Drummond v. Richland City Drug Co.,* 133 Iowa 266, 110 N. W. 471; *Donnelly v. Smith,* 128 Iowa 257, 103 N. W. 776. In the case last cited, it was said:

"Should we concede that, before the hearing for the writ, defendant had brought the conduct of his business into conformity with law, this could avail him nothing. One who has been engaged in the traffic in intoxicating liquors in open violation of law cannot avoid an injunction by simply making profession of a change of heart, and a swift change in existing conditions. Common experience has led to the conclusion that in all such cases the effort to reform should be given substantial aid, in the way of a temporary writ. Such is the thought of the cases above cited."

In the present case, the evidence shows that, prior to the year 1911 when the district was closed, the premises in question were leased to Mrs. Jerome and were operated as a house of prostitution in violation of law. It is true that the law at that time was not as stringent as is the present law. But it was nevertheless an unlawful business. The trial court found that the reason which prompted Mrs. Jerome to abandon the premises was the fact that she had been arrested and charged with conducting a house of prostitution, and that the Borts had full knowledge of the fact that, between the date of the purchase and the 28th day of June, 1913, the dwelling house was being used for the purpose of prostitution.

It is argued, with some vigor, that these findings are not supported by the evidence; but an attentive consideration of the entire record shows that a court would be exceedingly credulous that could find from the evidence in the case, either that the abandonment of the premises was not prompted by the prosecutions, or that the Borts did not have knowledge of the purpose for which the house was being used. It is true, as shown in the facts stated, that, after the two women occupying the house had been arrested on the 28th day of June, no further acts of prostitution were permitted therein; that, between this date and the 1st day of July, they caused their personal effects and the furniture in the house to be removed, and on the 1st day of July, the contract of purchase to be canceled and the premises to be surrendered to the owners; that the owners immediately removed therefrom such articles of furniture therein as belonged to them and closed the house, and that it remained closed until the time of the trial, which occurred on the 17th of July. These facts show a hasty change in existing conditions after the prosecutions were instituted, coupled with what is equivalent to a declaration on the part of the Borts not to permit the business to be again engaged in at the place in question, and on the part of Mrs. Jerome not to engage in it therein. Applying the rule above

stated, the showing is not sufficient to justify this court in reversing the trial court and thereby holding that the evidence conclusively establishes a permanent abandonment in good faith.   Such a holding would, in effect, nullify that provision of the law which imposes a tax of $300 upon the premises which have been used in violation of the statute, as a similar showing could doubtless be made in practically every case.   Manifestly the legislature did not intend to do an idle thing when it embodied in the law that provision relative to the tax, because it is only when a permanent injunction issues that the tax is to be assessed.

II.   At the conclusion of the trial, the Borts offered to file a bond conditioned that the alleged nuisance would be immediately abated and would not be renewed for a period of one year, provided that the $300 tax mentioned in the act should not be imposed.   The court refused to accept the bond because of the stipulation that the tax should not be imposed. Section 7 (Id., § 946-7) of the act provides, that, if the owner appears and pays the costs of the proceeding, and files a bond to abate the nuisance and prevent the same from being established or renewed within a period of one year, the court may, if satisfied of his good faith, order the premises closed under the order of abatement to be delivered to the owner, and that the order of abatement be canceled so far as the same may relate to said property, "and that the action shall thereby be abated as to said building only."   The last sentence of the section is:  "The release of the property under the provisions of this action (section) shall not release it from any judgment, lien, penalty or liability to which it may be subject by law."   This section contemplates that, upon the giving of the bond therein provided, the action shall be abated as to the building only, but that it shall survive for every other purpose.   If the giving of a satisfactory bond prevents the tax, then the final sentence in the section must be read out of the law, because it expressly provides that the re-

lease of the property under the bond shall not release it from "any judgment lien, penalty or liability." ·

III.   Section 8 (Id., § 946-8) of the act provides, that, whenever a permanent injunction issues, "there shall be assessed against said building and the ground upon which the same is located and against the person or persons maintaining said nuisance, and the owner or agent of said premises, a tax of three hundred dollars." The method of the assessment is further provided for and the manner of collection. This is a tax upon the traffic or business which the legislature saw fit to impose, not for the purpose of giving countenance to it, but as a deterrent against engaging therein. This portion of the act does not offend against the constitutional provisions providing for uniformity and equality of taxation. The act is general and applies to all persons who may offend against its provisions. Section 1 (Id., § 946-1) in defining what shall constitute a nuisance, uses the terms "whoever shall erect, establish, maintain," etc. Obviously the argument that the law provides for a tax not uniform or equal is not well founded. Neither is that provision of the constitution known as the due process of law clause offended against. The appellants in this case were made parties to the action and process was served upon them. They appeared and contested the validity of the tax. They therefore had their day in court. Had there been an attempt to levy the tax without making all the owners parties to the action, a different question would be presented, upon which we express no opinion.

Under the Iowa cigarette law, the opportunity given the owner to test the tax was a provision of the law which permitted him to make application at the meeting of the board of supervisors next following the listing of the property as subject to the tax. This application could be made at any time after the property had been assessed, upon eight days' notice given to the county attorney. The law was sustained, both by the supreme court of the state of Iowa and the supreme court of the United States. In *Hodge v. Muscatine*

*County*, 121 Iowa 482, 96 N. W. 968, 104 Am. St. 304, 67 L. R. A. 624, speaking of the tax proposed by that law, it was said:

"It is manifestly a tax upon the traffic which the legislature saw fit to impose, not for the purpose of giving countenance to the business, but as a deterrent against engaging therein. It confers no right, but imposes an impediment to the transaction of the business. It is clearly a tax on that business, levied to meet the burdens imposed upon the general public by what is thought to be the result upon the human race, and particularly upon children, of the use of cigarettes. Indemnity and protection of the public against evils resulting from the nature and character of the business is the central thought. It also partakes of the nature of a police regulation, but it is not to be wholly so regarded. Indeed, we think it may be fairly said to be a tax upon the business. That a tax is imposed for the double purpose of regulation and revenue is no reason for declaiming it invalid. 2 Desty on Taxation, 1384. Being a tax it was competent for the legislature to prescribe the proceedings and processes for its collection."

That case was taken to the United States supreme court, and the decision of the Iowa supreme court was affirmed. 196 U. S. 276. Speaking relative to the provisions for the enforcement of the collection of the tax, it was said:

"Coming now to the provisions for its enforcement, it is entirely clear that, as to the person actually carrying on the business, no notice of the assessment or levy of the tax is necessary. If the person carries on the business, the imposition of the tax follows as a matter of course. There is no discretion as to the amount. [Citing authorities.]

"It was within the power of the legislature to make the tax a lien upon the property whereon the business was carried. If general taxes upon real estate and specific taxes for improvements thereto, including pavements, sidewalks, sewers, the opening of streets and keeping them clean, may be made liens upon the property affected, it is difficult to see why a tax upon the business carried on upon such property may not be made a lien as well as a claim against the owner. The owner is not only chargeable with a knowledge of the law in

respect thereto, but he is presumed to know the business there carried on, and to have let the property with knowledge that it might become encumbered by a tax imposed upon such business."

IV. The judgment of the superior court provided that the building be closed for a period of six months, and that the furniture and fixtures made use of in conducting the nuisance be sold and the proceeds applied in payment of the costs, and that the balance, if any, be paid to the defendants as their interests might appear. This judgment is in accord with the provisions of the law. The action was against the thing, the place, as well as against the person. The closing of the building for a period of six months was a consequence of the unlawful acts of the defendants and was designed to secure the enforcement of the law. In providing for the abatement of a nuisance, the legislature may confer upon the court power to order the personal property used in connection therewith sold, and the proceeds applied in payment of the costs, and that the dwelling house, in the absence of the giving of a bond, as provided in the statute, be closed for a period of six months. *State v. Adams*, 81 Iowa 593, 47 N. W. 770; *Craig v. Werthmueller*, 78 Iowa 598, 43 N. W. 606.

The judgment of the superior court will be affirmed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.