[No. 13144.    Department One.    April 6, 1916.]

THE STATE OF WASHINGTON, *on the Relation of F. A. Kern, Prosecuting Attorney, Respondent*, v. LATHIE D. EMERSON, *Appellant*, MATTIE MCFADDEN, *Defendant*.[1]

CONSTITUTIONAL LAW—DUE PROCESS—NOTICE—PROSTITUTION—NUISANCE—ABATEMENT—PENALTY—LIABILITY OF OWNER. The provision of the "Red Light" law, 3 Rem. & Bal. Code, § 946-1 *et seq.*, making the owner of a house used for the purposes of prostitution liable in person and property for a fine of $300, to be entered as part of the decree of abatement, is unconstitutional as the taking of property without due process of law, where the owner was not in possession and had no notice, actual or constructive, of the purposes for which the house was being used.

DISORDERLY HOUSES—PENALTY—"TAX." The fine of $300 put upon the property of an innocent owner, in abatement proceedings under the "Red Light Law," being a charge in gross and not according to its value, is a penalty and cannot be upheld as occupation tax or a "deterrent."

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered July 3, 1915, upon findings in favor of the plaintiff, in an action to abate a nuisance. Reversed.

*Wm. O. Lewis*, for appellant.

*F. A. Kern* and *Newton Henton*, for respondent.

CHADWICK, J.—This is a proceeding to abate, as a nuisance, a certain dwelling house in the city of Ellensburg.

[1]Reported in 155 Pac. 579.

The complaint is based upon the act of 1913, ch. 127, Laws of 1913, p. 391 (3 Rem. & Bal. Code, § 946-1 *et seq.*), familiarly known as the "Red Light" law. The findings of the court are not disputed. The defendant Lathie D. Emerson was, prior to the 19th day of August, 1914, the owner of the property. On that date he entered into an executory contract of sale with defendant Mattie McFadden, who, since the first day of September, 1914, has lived in and maintained the dwelling house for the purposes of lewdness, assignation, and prostitution.

The defendant Lathie D. Emerson is a nonresident of the county of Kittitas, it being stated in the briefs that he has resided, at all times since the contract of sale was entered into, at the city of Ritzville, in this state. The court found as a fact that the defendant Lathie D. Emerson had no knowledge, information or notice, either actual or constructive, that a nuisance was being maintained upon the premises prior to the commencement of this action.

The defendant Emerson, who appeals, does not take issue with the conclusions of law and the decree of the court that the property shall not be hereafter maintained for the purposes mentioned, or that it shall be closed for a period of six months, but he does take issue and assigns as error, the decree of the court that a personal fine of $300 shall be assessed against him, to be paid within three months from the date of the judgment, together with the costs of the proceeding; the contention being that the facts found do not sustain the conclusions of law and the decree.

The concrete question presented by the record is whether an owner of property, who has contracted to sell it or who has leased it to another, is liable in person and in property for the tax or penalty, whichever it may be called, which the statute says shall be entered as a part of the decree of abatement.

The relator relies upon *State ex rel. Dow v. Nichols*, 83 Wash. 676, 145 Pac. 986; *State ex rel. Kern v. Jerome*, 80

Wash. 261, 141 Pac. 753, and *Tenement House Department v. McDevitt*, 215 N. Y. 160, 109 N. E. 88. We said in the *Dow* case:

"It is said, however, that the owners of the property had no knowledge of the existence of the nuisance. This is doubtless true. But the fact that the owners had no knowledge that prostitution was being carried on at the place mentioned, would furnish no reason why the court should not abate such nuisance if, in fact, it existed."

But the question here presented was not there discussed. We held that the court might abate the nuisance whether the owner had notice of its existence and continuance or no. This, a court of equity might do irrespective of the statute. In the *Jerome* case, the property had been used by the owner as a place of prostitution. She knew that the one she agreed to sell the property to, and had put in possession, was a prostitute. The only issue tried out, so far as she was concerned, was whether she had notice. This was clearly proven. She had her day in court and the court found her guilty, and the fine was rightfully imposed. This made due process of law, under the rule of *Hodge v. Muscatine County*, 196 U. S. 276, where a subsequent opportunity to have a remission of the tax was held to meet the constitutional guarantee of due process.

In this case, the owner is found to be innocent of actual participation in the maintenance, and without notice, actual or constructive, of the existence of the nuisance. So that we have an entirely different case. The *Hodge* case is apt authority in so far as the *Jerome* case is concerned, but it does not bear out the holding that the penalty or tax may be laid upon an unoffending owner—in person or in property —for that question was not within the facts. On the contrary, it was, after suggestion, passed by the court without decision.

This form of law by which an owner is made to suffer for the sins and omissions of his tenant is a modern creation. Its

first expression is to be found in the "Mulct" liquor laws passed by several of the states. These laws, so far as we have been able to inform ourselves, provided, in all instances, that the owner would be liable for the tax where the business was carried on by another, provided he had actual or constructive notice that his premises were used for the purpose of selling liquor. 23 Cyc. 150; *Morgan v. Koestner*, 83 Iowa 134, 49 N. W. 80; *State v. Lawler*, 85 Iowa 564, 52 N. W. 490; *State v. Severson*, 88 Iowa 714, 54 N. W. 347; *State v. Price*, 92 Iowa 181, 60 N. W. 514.

Following this law, came what is known as the "Cigarette" law. This law did not, as a rule, make any express provision as to notice and, so far as we are informed, the liability of an owner of property who is without notice to answer for a penalty has never been directly passed upon. *Hodge v. Muscatine County*, *supra; Cook v. Marshall County*, 196 U. S. 261.

Then came the "Red Light" law. This law was first adopted in Iowa, and thereafter in Washington, Minnesota, Nebraska, Illinois and possibly in other states. The Iowa law does not make the liability of an owner contingent upon notice, express or implied. Our law is the same as the Iowa law.

Whether the owner of a building where prostitution is practiced may be mulcted if he have no notice of its illegal use, either express or implied, has not been passed upon either in Iowa or Washington. In Nebraska, the court held in *State ex rel. English v. Fanning*, 96 Neb. 123, 147 N. W. 215, that the "Red Light" law, in so far as it assumed to put a tax upon an owner having no notice, was in violation of the constitution, although the unlawful use was enough to warrant an order of abatement, "even though the evidence as to the lack of knowledge on the part of the owner is such that it does not warrant an injunction or a judgment for costs against him." Saying further, that the owner could release

the property at once by giving the bond provided in the act. Our Laws, § 7 (3 Rem. & Bal. Code, § 946-7).

The law was before the supreme court of Minnesota at the suit of *State ex rel. Wilcox v. Ryder*, 126 Minn. 95, 147 N. W. 953. The court held, as we read the decision, that an owner who did not prove his innocence to the satisfaction of the court, and also inability to have acquired such knowledge by reasonable care and diligence, would be subject to the penalty or tax. With this holding we have no quarrel. But the supreme court of Nebraska, having the case of *State v. Fanning* still within its reach, in *State ex rel. English v. Fanning*, 97 Neb. 224, 149 N. W. 413, upon the authority of the Minnesota case, or, as we believe, upon a mistaken notion of the holding of that case, reserved its opinion as to the penal feature of the law.

Considering, then, that the Minnesota statute provides for notice, and that the question is still open in Nebraska, we turn to the decisions in New York. In *Tenement House Department v. McDevitt*, 85 Misc. Rep. 429, 147 N. Y. Supp. 941, the supreme court held that an owner of a building where prostitution had been practiced was not subject to the civil penalty of $300, in the absence of knowledge or notice, actual or implied. In that case no more than one or two acts of prostitution had been proven. Judge Bijur, who wrote the opinion, said:

"I am of opinion that a landlord of a tenement house cannot lawfully be held responsible merely because one or more acts of prostitution have been committed by a tenant or other person on the premises. It is evident that he could not prevent such acts without having an agent constantly present with every single person in the house. A requirement so oppressive would place a burden upon the ownership of this class of property, equivalent to substantial confiscation, and therefore be beyond the power of the state to impose. . . .

"Again, since the landlord cannot prevent such acts, to charge him with a penalty for their occurrence would be to punish him where he has omitted no legal duty and committed no wrong. . . .

"The provision in the law which we are discussing would, if interpreted as appellant claims, as I have shown above, neither prevent the commission of the offenses against which it is aimed, nor compensate anyone for such injury as might result from their commission."

On appeal, the court of appeals, in the same case (215 N. Y. 160, 109 N. E. 88), held that the imposition of the penalty was in the nature of a tax, or a petty penalty, and that there was "nothing that need shock any mind in the payment of a small pecuniary penalty by a person who has unwittingly done something detrimental to the public interest," citing many cases which, in our judgment, may be readily distinguished from the case at bar. The essence of the court's holding being:

"If the occupant of an apartment has used it for indiscriminate intercourse with men, has used it in the sense that she has kept or maintained it for that purpose (*Commonwealth v. Cook*, 12 Metc. 93; *State v. Ruhl*, 8 Ia. 447, 454), the diligent owner will seldom be blind to the offense. Looking, then, to the average results, the legislature has said that the owner must prevent at his peril a vicious use which can rarely be continued without his fault. It rules out inquiry into his excuses in the particular instance, because such excuses, if accepted, would tend to nullify the law. It frames its rules to meet the necessities of the average, rather than the exceptional case, and adjusts its penalties in correspondence with the common experience of mankind."

This reasoning, when the final holding of the court is considered, is not inconsistent with, but seems rather to be a statement of, the doctrine of implied notice. The judgment of the appellate division was affirmed upon the established fact that the acts complained of were isolated instances, not in themselves sufficient to put the owner upon notice. See *State v. Irvin*, 117 Iowa 469, 91 N. W. 760. The decision must be read in connection with § 151 and § 154 of the Tenement House Act, as amended. By these sections, an owner is made subject to the penalty if the tenement is used for the purposes of prostitution with the *permission* of the owner

thereof, or his agent, and in an action to establish the lien, etc., for a violation of the law relating to prostitution, etc., proof of the ill repute of the place or of the inmates thereof or persons resorting thereto, shall constitute presumptive evidence that the premises were so used with the "permission" of the owner or agent. The holding of the court seems to be no more than that a certain degree of diligence is put upon every owner of property who leases it, or puts another in possession of it, and that his permission, hence knowledge or notice, may be established by proving the general reputation of the place. The word permission, as there used, implies notice or knowledge. It is so held in the mulct liquor cases. *Larson v. Christianson,* 14 N. D. 476, 106 N. W. 51. See, also, holding on principle: *Lancaster Hotel Co. v. Commonwealth,* 149 Ky. 443, 149 S. W. 942, and many cases cited in "Words & Phrases," Title, "Permission."

It would seem that the ultimate holding in the tenement house case does no violence to any constitutional provision, and is consistent with sound reason. The suppression of a nuisance is essentially a proceeding *in rem,* and to hold an owner to constructive knowledge of the uses to which his property is put is not an unreasonable rule, for the order of abatement operates upon the property, and not upon the person. The suppression of a nuisance of which an owner has knowledge, or which is so long continued and under such circumstances that knowledge will be implied, is a burden attaching to the ownership of all property. The rule is as old as the law of nuisance itself. 29 Cyc. 1202; *Tenement House Department v. McDevitt, supra; Bohan v. Port Jervis Gas Light Co.,* 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711.

Hence it may be said, without fear of successful contradiction, that there is no case holding that an owner can be penalized under the "Red Light" law unless it can be said that he had knowledge or notice, either actual or constructive, of the practice of the things outlawed by the statute.

It will not be contended that an owner without notice is liable to pay the charge upon his property if it be a penalty. But it is said that the imposition is a tax which the owner of the property must pay as a "deterrent." As said in *Hodge v. Muscatine County, supra,* in construing the cigarette law:

"It is manifestly a tax upon the traffic which the legislature saw fit to impose, not for the purpose of giving countenance to the business, but as a deterrent against engaging therein. . . . It confers no right, but imposes an impediment to the transaction of the business."

A penalty cannot be converted into a tax by naming it a tax. The character of the imposition depends upon the purpose and objects of the law, and its results as they affect persons and property. It may be said to the credit of the legislature of Minnesota that it resorted to no subterfuge in drafting its Red Light law. It called the imposition a penalty, as, in truth, it is. A tax is a thing general in its application, a charge upon persons or property or classes of property. Taxes are designed and laid primarily for the support of the government, and their imposition implies a levy by the administrative officers of the government, equalization subject to judicial review, and payment into a fund previously established by law. Whereas, a penalty is a thing imposed by way of punishment for the violation of some statute. By the terms of the Red Light law, the charge is put upon property in gross, and not according to its value, and to hold that such a charge, when put upon an innocent owner, is an occupation tax or a "deterrent," is to defy all rules of construction, albeit, a penalty may be collected by civil process. Such a charge is always held to be a penalty when laid upon the innocent. The distinction between a tax and a penalty has been drawn in many decisions. They are cited in Words & Phrases under the titles, "Tax" and "Penalties."

But to inquire whether such a charge, as is here imposed,

is a tax or a penalty is a splitting of hairs, for the cigarette cases cited are not in conflict with our holding. For, whether the charge be held to 'be a penalty or a tax, it can be collected if there be due process of law—an opportunity to be heard before a proper tribunal. The cigarette law made such provision. Under it the owner may, within a certain time, make application for the remission of the tax. In the opinion of the court (*Hodge v. Muscatine County, supra*), it is noted that the defense there made, that the owner lived in the state of Illinois and had no knowledge whatever of the misuse of her property and never consented thereto, was unavailing because she did not allege that she did not have knowledge within ample time to make application for the remission of the "tax." The reasoning of that case would imply, at least, that whether the charge be a penalty or a tax, it could be collected if the owner were given an opportunity to contest its imposition for lack of notice. In this case, if the contention of the relator be sustained, there would be no opportunity to contest; the penalty would follow the simple fact of ownership, however innocent the owner might be.

Let us suppose that one who buys liquor rightfully sells it to a minor or an habitual drunkard, or to an Indian, and the statute provided that, in all cases, the first seller should be subject to a fine to be arbitrarily levied upon proof of the illegal sale. No man, whether lawyer or layman, would contend that the legislature had such power, unless it were shown as a fact that the original seller knew, or ought to have known, that his vendee intended to make an illegal sale, that is to say, that he was an accessory to the crime. It is so in this case. If a man rents his home, he has done a thing that he has a lawful right to do. If his tenant puts the property to an unlawful use, the tenant is guilty, but the penalty of his wrongdoing cannot be put upon the landlord unless he knew of the intended use, or the facts and circumstances are such as to make him, constructively, a party to the crime.

So that, assuming a penalty may be imposed upon one who is actually or constructively guilty of maintaining a nuisance, it does not follow that one who is not a party to it in any way can be charged. To do so would be to take the property of an unoffending citizen without due process of law.

The legislature has not assumed to go further than to make the property of a nonconsenting owner subject to penalty by closing it for a limited time. This is within the inherent powers of a court of equity. It is held, in nuisance cases, that a court has all power *in rem* to enforce its decrees, even to the destruction of the property.

We hold that the penalty of $300 may be imposed if the owner or his agent have actual knowledge of the misuse of his property, or, if the reputation of the place, when considered in the light of all the facts and circumstances, is such as to warrant a jury in saying that he should have known the character of the place, or the uses to which it was put; that is to say, he must have notice, actual or constructive.

The fact that the law does not provide, in terms, for notice, as did the mulct liquor laws to which we have referred, does not bear upon the case. To have so provided, would have been to say no more than the law demands.

The keeping of a bawdy house was an indictable nuisance at common law (Bishop, New Criminal Law, ch. 65), and to hold with respondent would put a greater burden upon an owner of property in an equitable proceeding than in a criminal action. It would be a thing unheard of and unparalleled in the history of jurisprudence.

The question is new and an open one in this state. We may reasonably expect that the law will be vigorously enforced and that the question discussed will frequently recur. For this reason, we have endeavored to reason it out along the lines of common sense and well established principles and as, we believe, the legislature intended. Any other conclusion would put a penalty, not upon a prohibited business, but upon

rightful and lawful ownership of property. Our holding, while having merit to hold every guilty person, will have the virtue of protecting the innocent, not only in their persons and property, but in their reputations. We are not unmindful, and the legislature was not unmindful, of the fact that there are thousands of good law-abiding Christian people in this state who own dwelling houses and other buildings, and who rent them to others. To charge them as parties to the maintenance of a house of prostitution, however innocent of wrongdoing, and without a showing of notice, actual or constructive, would be to shock all sense of justice and make the law a dragnet for virtue rather than a weapon for the slaying of vice; for no man can close his eyes to the fact that the penalty falls upon the property and reputation of the owner. The actual wrongdoer is generally, as shown by our own cases, irresponsible in property and without reputation.

The judgment is reversed, with directions to discharge appellant from the penalty in so far as it affects his person and property.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.