[No. 32210.　Department One.　September 1, 1953.]

THE STATE OF WASHINGTON, *on the Relation of Charles O. Carroll, as Prosecuting Attorney for King County, Appellant,* v. CARL E. GATTER *et al., Respondents.*[1]

[1]Reported in 260 P. (2d) 360.

154

*Charles O. Carroll* and *V. D. Bradeson,* for appellant.

*Pomeroy, Yothers, Luckerath & Dore,* for respondents.

WEAVER, J.—Pursuant to statute (Rem. Rev. Stat., § 946-2 [*cf.* RCW 7.48.060]) the prosecuting attorney commenced this action in equity, in the name of the state, to abate the Oxford Hotel in Seattle for six months; to have the contents thereof removed and sold as provided by law; to enjoin any further unlawful acts upon the premises; and to levy a penalty against the defendant owners. After a trial to the court, a decree was entered dismissing the action and allowing costs against the state. Relator has appealed.

Oral testimony was not taken at the trial. Counsel presented a stipulation which read, in part:

"It is stipulated on behalf of the relator and defendants that at the trial of Cause Number 437118 the following matters will be testified to by witnesses called for and on behalf of the State:   . . ."

Throughout the proceeding, so far as disclosed by the statement of facts, the parties treated the stipulation as containing the established and agreed facts pertinent to the controversy. The trial judge in his oral opinion commended counsel "on the stipulation on the facts in this case."

The trial court entered findings of fact which are based upon the facts appearing in the stipulation. Appellant assigns error to a number of the findings upon the theory, as expressed in his reply brief,

". . . It will be noticed that we stipulated that 'The following matters will be testified to by witnesses.' That does not mean that either party is bound by the full impact of the testimony."

Under the circumstances, we cannot subscribe to appellant's theory that he is not bound by the full impact of the testimony. When a case is submitted to the trial court upon stipulated facts, neither party will be heard to suggest on appeal that the facts were other than as stipulated. Relief from a stipulation may be had only in the trial court. See annotation, 161 A. L. R. 1161, Relief from Stipulations. Appellant's assignments of error directed to the findings of fact are not well taken.

The following appears from the findings of fact and the stipulation: Respondents have owned and operated the Oxford Hotel for the past fourteen years. It contains one hundred and fourteen rooms, approximately eighty of which are occupied by permanent guests. The balance of the rooms are for transient guests. The hotel and its business are valued at two hundred fifty thousand dollars, its contents at sixty-five thousand dollars.

Between March 25, 1950, and July 12, 1951, criminal charges were filed because three acts of prostitution and four offers to commit prostitution were committed on the premises. Six of the offenses were aided and abetted by bellmen in respondents' employ. All of the parties involved in these acts were convicted, except one bellman who forfeited bail. None of the prostitutes were registered tenants of the hotel, except one who had been registered for two weeks. She was immediately ejected upon her arrest. These were the only arrests made for such illegal acts during the period respondents have operated the hotel.

Neither of respondents aided, abetted, encouraged, authorized, directed, participated in, nor profited by, the commission of the acts. Respondents had specifically instructed the bellmen that they were not to participate in any such acts and that they would be discharged immediately should they do so. Upon learning of the participation of the bellmen, they were immediately discharged and not re-employed. Respondents finally discharged all bellmen employed by the hotel and, since July 13, 1951, have operated the business themselves with the help of members of the family.

The stipulation supports the finding of the trial court that neither of the respondents had knowledge of the acts of prostitution or offers to commit prostitution on the premises *prior* to the time said acts occurred.

Respondents, however, were not ignorant of the problem which was present. They had corresponded with the armed forces disciplinary control board in Seattle between February 21, 1951, and November 21, 1951. Respondent husband was present at three meetings of the board. They knew that the board had declared the Oxford Hotel "off limits" and "out of bounds" to personnel of the armed forces, who were forbidden to enter or patronize the hotel or tavern operated by respondents. The action of the board was based upon the activities upon the premises of prostitutes, substantiated by the Seattle police records. On November 21, 1951, the restriction was removed from the tavern. It was, however, in effect against the hotel at the time of trial.

Based upon the events leading to the conviction of the prostitutes and procurers heretofore detailed, respondent husband was convicted in justice court of conducting the hotel in a disorderly manner by permitting the rental of rooms for the purpose of prostitution. Upon appeal to the superior court, he was tried upon an amended complaint alleging that he wilfully and unlawfully kept a disorderly house. The jury returned a verdict of guilty. At the time of the trial of the instant case, the superior court had a motion for a new trial under advisement.

The parties stipulated "that the hotel has a reputation for being a decent, orderly, respectable hotel in the community."

The trial court found that the principal use of the Oxford Hotel was that of a legitimately operated hotel, and that it was not operated nor maintained for the purpose of lewdness, assignation, or prostitution. It concluded that it was not a nuisance under the statute and refused to abate it.

■ At the trial, appellant offered thirteen venereal disease reports, purportedly made out by the Seattle department of public health, although such does not appear on the face of the reports. Their rejection constitutes appellant's

first assignment of error. The alleged . complainants are identified only by number. Each report designates the Oxford Hotel as the place of exposure. They were offered, not for the purpose of proving that the venereal diseases were reported to the health department, but for the purpose of proving the matters contained therein. Being offered testimonially, they were clearly hearsay. The complainants had not been and could not be subjected to cross-examination. It was not error to refuse to admit the reports in evidence.

This action was prosecuted under Laws of 1913, chapter 127, § 1, p. 391 (RCW 7.48.050, Rem. Rev. Stat., § 946-1), which provides:

"Whoever shall erect, establish, maintain, continue, use, own or lease any building or place used for the purpose of lewdness, assignation or prostitution is guilty of a nuisance, and the building or place, or the ground itself, in or upon which lewdness, assignation or prostitution is conducted, permitted or carried on, continued or exists, and the furniture, fixtures, musical instruments, and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided."

Was it the intention of the legislature that this statute should apply to premises operated primarily as a hotel and having "a reputation for being a decent, orderly, respectable hotel in the community," when certain acts of prostitution have taken place thereon? Or was it the intention of the legislature that the statute should only apply to premises which have first been determined to be houses of prostitution? The precise question is one of first impression in this jurisdiction.

Our former decisions treating with this statute are of little aid in solving the specific question presented here. Our recent decision in *State ex rel. Carroll v. Seattle Hotel Building Corp.*, 41 Wn. (2d) 595, 250 P. (2d) 982 (1952) (on appeal at the time of trial of the instant case), is not determinative. There, the trial court entered findings, upon conflicting evidence, that defendants had not maintained the premises for the "purpose of lewdness, assignation or pros-

titution"; that the principal use of the premises was that of operating a legitimate hotel; and that the hotel was not a nuisance within the terms of the statute. The decision simply held that the evidence did not preponderate against the findings. We did not reach the question raised by the instant case.

It is outside the scope of discussion necessary to this opinion to delve into the history of "red light" and "restricted" districts, as they were permitted, authorized, or suffered to exist by some municipalities of this state for some time after the turn of the century. Others have done so. (See reference thereto in *State ex rel. Kern v. Jerome*, 80 Wash. 261, 263, 141 Pac. 753, and *Skid Road*, p. 169 *et seq.*, Murray Morgan, Viking Press, 1951).

It is sufficient to point out that "red light districts" constituted the problem. Laws of 1913, chapter 127, p. 391, was enacted as one of the solutions thereto. This becomes more apparent when we consider the legislative title of the act:

"An Act relating to houses or places of lewdness, assignation and prostitution, to declare the same to be nuisances, to enjoin the person or persons who conduct or maintain the same, and the owner or agent of any building or property used for such purposes, and to assess a tax against the person or persons maintaining said nuisance and against the building or property and owner and agent thereof."

It appears from the title of the act that it was the intent of the legislature to deal with *"houses* of lewdness, assignation and prostitution." This conclusion is buttressed by the fact that in at least seven decisions of this court, the statute has been designated and referred to as the "Red Light Law." *State ex rel. Kern v. Jerome, supra; State ex rel. Dow v. Nichols*, 83 Wash. 676, 145 Pac. 986 (1915); *State ex rel. Kern v. Emerson*, 90 Wash. 565, 155 Pac. 579 (1916); *State ex rel. Lundin v. Campbell*, 95 Wash. 701, 163 Pac. 279 (1917); *State ex rel. Murray v. Vlahakis*, 126 Wash. 135, 217 Pac. 717 (1923); *State v. Fidelity & Casualty Co.*, 142 Wash. 400, 253 Pac. 446 (1927); *Tacoma v. Houston*, 27 Wn. (2d) 215, 177 P. (2d) 886 (1947).

The supreme court of Nebraska in *State ex rel. English v. Fanning*, 97 Neb. 224, 149 N. W. 413 (see *State ex rel. English v. Fanning*, 96 Neb. 123, 147 N. W. 215, a prior decision involving the same parties, premises, and occurrences) had occasion to discuss the scope and purpose of the Nebraska abatement statute, which, in many respects, is similar to the one of this state. Both statutes were modeled after the Iowa abatement statute. See *State ex rel. Kern v. Jerome, supra.*

Of the scope and purpose of the act, the Nebraska court said:

"The title of the act reminds us that it is houses of lewdness, assignation and prostitution that are to be dealt with, and in determining the character of the house in question it is of great, if not controlling, importance to inquire whether it is principally devoted to a legitimate purpose.

"The object of the statute is to provide an efficient and prompt means for suppressing the so-called 'red light district' in communities that are unwilling to tolerate such a nuisance. *The statute is not intended as a means of regulating the morals of private individuals, nor to prevent immorality in hotels, mainly devoted to the accommodation of families and moral, well-behaved people.* Of course, if a hotel becomes 'a house of lewdness, assignation and prostitution,' it will not escape the ban of the statute because some innocent people are deceived and patronize the house in good faith as a hotel. . . .

"The statute is a wholesome one. It ought to be liberally construed to enable virtuous communities to protect themselves against public places kept for lewd purposes. It may be that the authorities of Omaha have begun with the most shameless bawdy house within that city, but the evidence taken at the trial does not convince us that such is the fact." (Italics ours.)

This clearly and concisely expresses the purpose and defines the scope of the abatement statute here under consideration.

Although not controlling, the fact that the legislature specifically designated "musical instruments" upon the premises (among other things) as being subject to abatement, is some indication of the type of premises with which the 1913 legislature intended to deal when it passed the act;

for musical entertainment, in many instances, seemed to be a subsidiary adjunct of the brothels which formerly operated in the "red light" districts. See *Skid Road, supra.*

█ To sustain the application of the act, it must be shown to the satisfaction of the court, by a preponderance of the evidence, that the premises were being used as a house of lewdness, assignation, or prostitution as that term is generally understood. The "use" of the premises of which the statute speaks, requires more than a showing that sporadic acts of prostitution occurred therein. In the instant case, it can be concluded from the stipulation that these acts were not sufficient to establish a reputation for the premises other than being a "decent, orderly, respectable hotel in the community."

The statute is not directed to the abatement of commercial eroticism—that is governed by the criminal statutes. It is directed to the abatement of premises which, by reason of sufficient happenings therein, have absorbed and taken the character of the acts committed, and have in fact become houses of lewdness, assignation, or prostitution.

But the operator of such premises cannot escape the force of the abatement statute by calling the premises a "hotel," "apartment," "club," or giving it any name which purports to identify it as a place of lawful and legitimate business; nor can certain immunity be gained by showing mathematically that the principal business of the establishment is legitimate. That fact is one to be considered by the court in reaching its ultimate finding, but is not necessarily, of itself, sufficient to be conclusive. The legitimate and the illegitimate activities occurring on the premises may be so intermingled that the lesser activity is predominant and controls the determination that the premises are, or are not, houses of lewdness, assignation or prostitution.

It was not error for the trial court to dismiss this action.

Appellant assigns error to the allowance of costs against the state.

█ Costs can be allowed against the state only when they are expressly authorized by statute. *Washington Re-*

*corder Publishing Co. v. Ernst,* 1 Wn. (2d) 545, 97 P. (2d) 116 (1939).

Rem. Rev. Stat., § 491 [*cf.* RCW 4.84.170] provides:

"In all actions prosecuted in the name and for the use of the state, . . . the state . . . shall be liable for costs . . . to the same extent as private parties."

Rem. Rev. Stat., § 946-2 [*cf.* RCW 7.48.060] provides:

"Whenever a nuisance exists, as defined in this act, the prosecuting attorney . . . may maintain an action in equity in the name of the state . . . upon the relation of such prosecuting attorney . . ."

This action was commenced by the prosecuting attorney in accordance with the provisions of the above quoted statute. It was maintained in the name of the state. It likewise was for the use of the state. The assignment of error is without merit.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.